## HAMILTON vs. WILLIAMS.

1. The rule of the common law, which still prevails except so far as it has been changed by particular statutes. held a judge exempt from a civil suit, or indictment, for any act done, or omitted to be done by him, when sitting as judge.

2. Under the statute which gives an action at law on the official bond of a county-court judge, "for any injury, waste, or damage sustained in any estate, in consequence of any neglect or omission of taking good and sufficient security from guardians, executors, or administrators", (Clay's Dig., p. 296, § 1,) no suit can be maintained on his bond for the failure of the judge to require a guardian to renew his bond, or to give further security, on account of the insolvency, removal, &c., of his original sureties.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. NAT. COOK.

This action (which was commenced in August, 1853) was brought by Martha P. Hamilton, wife of William Hamilton, against Thomas M. Williams, to recover $1490 72 dam-

ages, which plaintiff claims as her separate estate, for the breach of the condition of the defendant's official bond as judge of the County Court of Lowndes. The complaint alleged, that plaintiff was a minor at the time of the execution of defendant's said bond, and that one John Powers was then her lawful guardian by regular appointment from a preceding judge of said court; that said guardian's sureties on his official bond became insufficient and insolvent, and removed with their property beyond the limils of the State; that the defendant had notice of these facts, and was requested to require further security from said guardian, but he wholly failed and neglected to do so; that afterwards, on the final settlement of said guardian's accounts, a decree was rendered against him, in favor of plaintiff, for the amount claimed as damages in this suit; that an execution was regularly issued on this decree, against said guardian, and was returned "no property found"; and that afterwards another execution was regularly issued, under the statute, against him and his sureties, which was also returned "no property found."

The court sustained a demurrer to the complaint, and its judgment is now assigned for error.

Geo. W. Stone, for the appellant:

1. It is admitted that no adjudged case has been found, showing that this action can be maintained at common law; although in the matter of taking bonds, it is contended, the judge acts ministerially, not judicially. On principle, he should be held accountable for his omissions of plain and commanded duty.

2. Under our statutes, new liabilities are cast on the judge. Clay's Dig., p. 303, § 31; p. 300, § 21; p. 268, § 5; p. 221, § 5. These statutes clearly enjoin the duties, for the breach of which plaintiff complains.

3. The condition of the judge's bond is, "for the faithful performance of the duties assigned him." The bond in this case conforms substantially to it. Why require a bond? Is it a matter of form? Is it not intended to enforce the performance of his duties, by a penalty?

4. It is said, the omission complained of is not covered by the statute. The last clause is relied on. This statute is

remedial; of public benefit. It must be construed in reference to the mischief intended to be remedied. What was the mischief? The danger that the property of minors and distributees would be lost. Is not the danger equally great from subsequent, as from original insolvency? Can a higher duty rest on the judge, than to require a new bond, when the sureties are known to him to be insolvent?—Winslow v. Kimball, 25 Maine 493; Mason v. Finch, 2 Scam. 223; Wolcott v. Pond, 19 Conn. 597; Woods v. Marin, 1 Greene (Iowa) 275; 17 Verm. 479.

5. But this argument restricts the statute to too narrow bounds. The condition of the bond is for the "faithful performance of all the duties assigned", &c. To require a renewal of guardian's bond, is one of the duties assigned.—See Digest, p. 268, § 5; 221, § 5. If the statute stopped here, there would be a right of action for every failure to perform the commanded duties. The remaining words of the clause, "subject to be sued on", &c., were unnecessary, and are merely cumulative.

6. The argument proves too much. If it be correct, the judge of the orphans' court may take no security from sheriffs, &c.. and there is no redress. Was this the intention of the Legislature?

7. The clause relied on does not sustain the argument: it enacts that suit may be maintained to recover for any "damage", caused by "any neglect or omission of taking good and sufficient security from guardians", &c. Is there anything in this language which limits the operation to the taking of the original bond? We contend, it covers new, or renewed bonds, as well as original bonds. The language justifies the construction; and the intention of the Legislature, as gathered from the mischief intended to be remedied, sustains it.

8. The second count complains of the omission of duties, all of which are ministerial,—none judicial. If it be argued that we have averred what is not susceptible of proof, we reply, 1st, that proof could be made that the guardian was then in good credit,—the public had confidence in him,—and from this proof the jury would draw the desired inference; 2d, the court will presume the guardian would have renewed his bond, if cited for the purpose.

34

9. If the averments of the complaint show no right of action; then the condition of wards is deplorable indeed : they are not capable of taking care of their own interests, and, under the age of fourteen, have no voice in the selection of their guardians; their property is placed, without their consent, in the hands of an irresponsible trustee, or rather, one who becomes irresponsible, and they can recover their loss from no person.

10. It may be argued that the Legislature, in employing the word "may", intended to leave it discretionary with the judge to cite the guardian to renew his bond, or not, at his own pleasure. The word *may* means *shall*, when it relates to the performance of official duty, in which the public are interested.—*Ex parte* Simonton, 9 Por. 390, and cases cited ; 4 Gilm. 20.

11. The action in this case is correctly brought.—Code, §§ 2130, 2131, 2154.

WATTS, JUDGE & JACKSON, *contra* :

1. It is clear that this action could not be maintained at the common law; for " the doctrine which holds a judge exempt from a civil suit, or indictment, for any act done, or omitted to be done by him, sitting as a judge, has a deep root in the common law." It is to be found in the earliest judicial records, and it has been steadily maintained by an undisturbed current of decisions in the English courts, amidst every change of policy, and through every revolution of their government. See the learned and eloquent opinion of Chancellor Kent, in Yates v. Lansing, 5 Johns. 282, afterwards affirmed in the High Court of Errors, 9 *ib.* 395 ; see, also, Seaman v. Patton, 2 Caines 112; Cunningham v. Bucklin, 8 Cow. 178. And it has been expressly held, that this doctrine is applicable in a suit like the present, against a judge of probate, for omitting to take security from a guardian.—Phelps v. Sill, 1 Day's Conn. Rep. 315. From the characters composing the Supreme Court of Errors of the State of Connecticut, when this decision was made, Chancellor Kent states, in Yates v. Lansing, *supra,* "it is entitled to great consideration." The case of Phelps v. Sill, *supra,* also establishes the position that the taking of bonds of guardians, &c., is not a ministerial, but a

judicial act ; and that in neglecting and refusing to take such bonds, "he acts in the exercise of judicial power", and cannot be questioned therefor in a civil suit. See, also, the argument of counsel on both sides, in said case of Phelps v. Sill.

2. The action not being maintainable at the common law, the question then arises, can it be maintained under any statute of this State? The condition of the bond is, "for the faithful performance of the duties assigned him." From the condition of the bond, if nothing more had been said in the act, it might be contended that such judge was by implication liable upon the bond for "the faithful performance" of every official duty. But the act, in this regard, leaves nothing to implication, but states that such bond shall be "subject to be sued on by any person or persons, for any injury, waste, or damage sustained in any estate, in consequence of any refusal or omission of taking good and sufficient security from guardians, executors, or administrators." Specifying thus the only case in which the bond "shall be subject to be sued on", in no other case can it be ; for, "*expressio unius est exclusio alterius.*" Is this a suit, then, for "neglect or omission of taking good and sufficient security?" It is not, for the guardian was appointed, and the security taken, by the predecessor of the appellee in the office of judge of the County Court. The statute above relates to the original taking of good and sufficient security : this is the obvious import and construction of the statute; and it being in derogation of the common law, it is to be strictly construed. (See Chancellor Kent's construction of *habeas corpus* act, in this connection, 5 Johns. 282, *supra.*) What, then, is this suit? It is to recover against the appellee for having failed, neglected, and refused, as county-court judge, to issue a citation against the guardian in the pleadings mentioned, and to take proof showing that his (the said guardian's) sureties had become insufficient, as he might have done under the statute in Clay's Digest, pp. 221-2, §5. For neglecting or omitting to do this, no right of action on the bond is given by the statute. If the judge failed to perform this duty on notice or request, the remedy was by *mandamus* to compel him to do it; and by a failure to apply for the appropriate remedy, if loss or injury ensues, it is the misfortune of those who sustain it. The judge could order new and further se-

curity only upon notice, and on proof of "gross neglect", or on proof that the securities had become insufficient, &c.— Clay's Digest 221-2, § 5. If the proceeding be under Clay's Digest 268, § 5, still a judicial investigation would have to be had, and proof to be made.

3. But it is said, that the establishment of this position might operate greatly to the detriment and injury of wards, they having no one to represent them but their guardians. This argument destroys itself; for to hold it to be good, this court must decide that a probate judge, under the penalty of a forfeiture of his bond, is bound, *mero motu*, to examine from time to time all guardians' bonds in his office, as well those taken by himself as by his predecessors, and also to examine into the condition of the sureties thereto, and whether their circumstances have changed, or are changing, and to issue citations and remove, or require additional sureties. Hard would be the position of a probate judge, if such were to be his duties and responsibilities! But such are not his duties and responsibilities; he is not bound to act, unless upon motion or request; the person who makes the motion or request can also move for a *mandamus*, or other appropriate remedy, if the judge fails or refuses to act; and if the judge is actuated by corrupt motives, can have him indicted or impeached; and it it is an extreme and improbable case, to suppose that a ward would have no friend or relative to act for him in a proper case.

CHILTON, C. J.—The statute requires, that the bond of the county judge shall be executed, payable to the Governor and his successors in office, and "conditioned for the faithful performance of the duties assigned him"; and further provides, that it "shall be filed in the office of the Secretary of State, subject to be sued on by any person or persons, for any injury, waste, or damage sustained in any estate, in consequence of any neglect or omission of taking good and sufficient security from guardians, executors, or administrators."

The present action is on the judge's bond, for failing to require the guardian of the plaintiff to renew his bond, or to give further security,—that which he had previously given having become insufficient by reason of insolvency and removal, &c.

The question is, whether, under the statute, an action lies for such a supposed breach.

Another section (§ 14) of the same statute which gives the action, as above stated, provides, that the guardian may be ordered to give further security, on proof that his sureties have become insufficient.

It is insisted by the counsel for the appellee, that the ordering of further security is a judicial, not a ministerial act; and they invoke the common-law rule, the correctness of which we acknowledge to the fullest extent, "that a judge is exempt from a civil suit, or indictment, for any act done, or omitted to be done by him, sitting as a judge."—Yates v. Lansing, 5 Johns. 282-91, and authorities there cited,—affirmed in 9 Johns. 395. The wisdom and sound policy of this rule is apparent to every one who has correct views of the administration of justice; for, if a judge is liable to answer in a civil suit for his judicial acts, for every judgment he renders, at the instance of every party, who, blinded, it may be, by self-interest and partiality for his cause, but excited by the mortification of defeat, may see proper to sue him, he might be overwhelmed in litigation; the citizens would soon lose all respect for the law and reverence for those who administer it; indeed, the independence of the judiciary, the great conservative department in every well-regulated government, would be destroyed, and no man would hold the office of judge, at the peril of being thus arraigned for every judgment he pronounces.—See Groenvelt v. Burwell, 12 Mod. 386; 1 Salk. 396; 1 Ld. Ray. 454.

Such was (and still is) the salutary common-law rule, except so far as the same has been changed by our statutes.

The statute before us, notwithstanding the general terms used in the condition of the bond, "for the faithful performance of the duties assigned him", specifies and points out the instances in which the bond may be put in suit. It is "subject to be sued on by any person, or persons, for any injury, waste, or damage sustained by any estate, *in consequence of any neglect or omission of taking good and sufficient security from guardians*", &c. This latter clause in the section is supposed by the counsel for the appellant to be mere redundancy; but we think it has an important office to perform. It prescribes the cases in which the bond may be put in suit; and by thus

particularizing the instances in which an action may be maintained upon it, its effect is, to limit the operation of the statute to these particular cases, upon the maxim, "*expressio unius exclusio alterius.*" If the judge, after having appointed a guardian, neglects or omits to take sufficient security, he is liable to be sued on his bond, if injury ensue to the ward in consequence thereof. But suppose, when application is made to him for the appointment of a guardian, he should, in his official capacity as judge, determine not to appoint one, and adjudge that the appointment pertained to the judge of another county, or that the property of the ward was within another jurisdiction; now, however erroneous such a decision might be, it could not be pretended that the statute was designed to cover such case, or that by the common law the judge could be held responsible. In the case just supposed, he omits to take security; but this omission is the result of his judicial action in deciding against the appointment of a guardian. It is clear, therefore, that in order to maintain an action upon the bond in such case, for the omission to take security, the judge must be held responsible for an erroneous decision *as judge*, in failing to appoint a guardian that he might take from him security. The case supposed, we think, furnishes, in principle, a fit illustration of the case before us. As in that case, the plaintiff, in order to arrive at the omission which would constitute a breach of the bond, as defined by the statute, must impeach the judicial action or omission of the judge *as judge*; so here, as the judge, in his judicial capacity, must first make an order requiring further security from the guardian, and had no right to remove him or discharge the old securities by the acceptance of a new bond, without such previous order, the omission or neglect to require or take security involves an inquiry into a judicial omission—the failure to hear proof and pass an order for further security, or on failure the removal of the guardian. It is obvious, therefore, that the *gravamen* of the complaint is the judge's omission to discharge a judicial, not a ministerial function. It is not the neglect or omission of taking good and sufficient security merely which is the burthen of the complaint, but the failure of the judge to order the guardian to give such security, which order must be made and decided upon proof of the

insufficiency of the sureties already on the bond, and thus involves a judicial investigation. The statute not embracing such omission of the judge, and the failure to take good security being dependent on it, no action lies for the failure to take such security. If the order had been made, and the judicial function involved in its adoption had been discharged, we are not prepared to hold that the judge would not be liable on his bond for failing to take good security upon such order, equally as if he were taking security in the first instance. It would certainly fall within the mischief intended to be remedied by the statute ; but until then, the breach contemplated by the statute does not accrue, and cannot. If the judge erroneously refuse to act, upon complaint for further security, there is a remedy by *mandamus* ; if he corruptly refuse, or is guilty of malversation in office, the constitution and the statute (Code, § 685) point out the remedy ; but neither the common law, nor the statute, makes him liable to a civil suit for his acts or omissions done as a judge.—Phelps v. Sill, 1 Day's Rep. 315.

Our conclusion is, that the demurrer was properly sustained to the complaint. The judgment must consequently be affirmed.