# Irion *et al. v.* Lewis.

*Action on Official Bond of Justice of the Peace.*

1. *Immaterial issue.*—When an immaterial issue is formed, on account of defective pleadings not objected to, neither the admission of relevant evidence, nor the giving of any pertinent charge to the jury, is available on error.

2. *What damages are recoverable, in action against justice of the peace for corrupt official misconduct.*—In an action for damages against a justice of the peace, charging him with corrupt official misconduct in tampering with the jury, on a trial of the right of property had before him, to which the plaintiff was a party; if the complaint does not aver that the verdict of the jury, on the trial before the justice, was against the plaintiff, he cannot be allowed to prove the value of the property in controversy, as an element of his damages; nor can he prove the expense incurred in the prosecution of the suit in

the Circuit Court, to which it was removed by *certiorari*, in the absence of an averment that it was there determined in his favor.

3. *Official bond of justice of the peace; liability under.*—The requisition of an official bond from a justice of the peace, conditioned for the faithful performance of his duties (Rev. Code, §§ 840, 157), does not increase his liability to civil suits, nor make any official dereliction actionable which was not already actionable: it only renders him and his sureties liable for acts for which, without a bond, he alone was liable.

4. *When action lies against justice of the peace.*—For corrupt official misconduct on the trial of a cause within his jurisdiction, a justice of the peace is not liable to a civil action, but can only be punished criminally.

APPEAL from the Circuit Court of Lauderdale.

Tried before the Hon. W. B. WOOD.

This action was brought by William G. Lewis, against Thomas C. Irion, Philip I. Irion, and Elijah G. Chandler; was commenced on the 10th February, 1874; and was founded on the official bond of the said Thomas C. Irion as a justice of the peace, which was dated the 7th November, 1871, and was conditioned that the said Thomas C. "shall faithfully discharge the duties of said office, during the time he continues therein, or discharges any of the duties thereof." The complaint alleged, as breaches of the condition of the bond—1st. "That on the — day of —, 1873, there was a trial of the right of property before said defendant, Thomas C. Irion and one Frank W. Carroll, as justices of the peace as aforesaid, between plaintiff and one J. P. Cummins; and that after the cause had been put to the jury, the witnesses examined, and the jury charged, and after the jury had retired to consider their verdict, said defendant, corruptly, and with intent to injure, harass, and oppress plaintiff, retired with the jury, argued with them, and tried to persuade them to find a verdict against said plaintiff." 2. "That after said judgment had been rendered, on said — day of ——, 1873, against plaintiff, by said justices as aforesaid, said Thomas C. Irion and Frank W. Carroll, corruptly, and for the purpose of harassing and oppressing plaintiff, refused upon application to grant him an appeal from said judgment, unless plaintiff would get three certain named men to go on his bond as sureties, although there were other men who were willing to go on plaintiff's bond, who were responsible for any judgment that might be rendered against plaintiff in said cause." There was no demurrer to the complaint, but the defendants separately pleaded not guilty, "with leave to give in evidence any special matter of defense"; and the cause was tried on issue joined on this plea.

On the trial, as the bill of exceptions states, the plaintiff having introduced evidence tending to prove the alleged tampering with the jury as charged in the complaint, and the defendants having introduced evidence rebutting this testi-

[Irion et al. v. Lewis.]

mony, the plaintiff was asked "to prove the value of the horse and oxen involved in the said trial before the said justices, and to state what amount of damages he had sustained in the premises by reason of the action of said defendant as charged in the complaint"; and stated, in reply, "that he has been injured and damaged to the amount of the value of the said property, which he states to be one hundred dollars; which damage has been done him by the loss of said property, which has been sold as subject to the attachment in said cause, as the property of the defendant therein; and that he has been damaged to the extent of another one hundred dollars, by reason of his personal expenses and the attendance of witnesses for three terms of this court, in litigating his claim to said property, which was carried to this court by him by *certiorari*, and in employing and paying his attorneys in said court." To this question and answer, each, the defendants objected, because there was no averment of special damage, and reserved exceptions to the overruling of their objections. Several exceptions were also reserved by the defendants to charges given and refused, which require no special notice. All the rulings to which exceptions were reserved, are now assigned as error.

W. COOPER, and R. O. PICKETT, for appellants, cited the following cases: 1. As to the right to recover special damages, when not averred in the complaint: *Lewis v. Paul*, 42 Ala. 136; *Smith v. Gafford*, 33 Ala. 172; *Gandy v. Humphries*, 35 Ala. 626. 2. As showing that a civil action cannot be maintained against a justice of the peace, under the averments of the complaint: *Jordan v. Hanson*, 49 N. H. 199; *Steele v. Dunham*, 26 Wisc. 393; *Lester v. Governor*, 12 Ala. 624; *McGrew v. Governor*, 19 Ala. 89; *Hamilton v. Williams*, 26 Ala. 527; *Morrow v. Byrd*, 6 Ala. 834; 13 Wallace, 350.

STONE, J.—The damages which are recoverable must be the natural and proximate consequence of the act complained of as injurious.—1 Brick. Dig. 522, § 8; *Bullock v. Ferguson*, 30 Ala. 227; *Sims v. Glazener*, 14 Ala. 595; *Burton v. Holley*, 29 Ala. 318; *Ivey v. McQueen*, 17 Ala. 408. Damages, for remote or consequential loss, cannot be recovered.—Sedg. Dam. 65.

The present is a suit against a justice of the peace and his sureties on his official bond. Two breaches are assigned. The first is, that on a trial of the right of property had before said Thomas C. Irion and another justice, in which the plaintiff in this suit was claimant, "after the jury had retired

to consider of their verdict, said defendant, Thomas C. Irion, corruptly, and with intent to injure, harass and oppress plaintiff, retired with the jury, argued with them, and tried to persuade them to find a verdict against said plaintiff." It will be observed, that there is no averment that such argument and persuasion exerted any influence on the jury; nor is it averred what the verdict of the jury was. It is also worthy of remark, that the complaint contains no averment that the property which was in controversy was the property of plaintiff.

The second breach assigned against the said justice of the peace is alleged to consist "in this: that after said judgment had been rendered, on said —— day of ——, 1873, against plaintiff, by justices as aforesaid, said defendant Thomas C. Irion, and said Frank W. Carroll, corruptly, and for the purpose of harassing and oppressing plaintiff, refused, upon application, to grant him an appeal from said judgment, unless plaintiff would get three certain named men to go on his bond as sureties, although there were other men who were willing to go on plaintiff's bond, who were responsible for any judgment that might have been rendered against plaintiff in said cause." It will be seen that this breach contains no averment that plaintiff did not and could not obtain the three *named men* as sureties on his appeal bond; that he failed to obtain an appeal, or that he was put to any extra trouble or expense in securing his statutory right of appeal. There was no demurrer to the complaint.

1. There being an issue of fact formed on the complaint, as above described, any evidence, and any charge of the court given, that were pertinent to the issue thus formed, even though the issue be immaterial, furnish no ground of complaint on error.—See *Mudge v. Treat*, at present term.

2. The question arises, what evidence, and what proof of damages, should have been received under the averments of this complaint? This, in the present state of the pleadings, is not free from difficulty. As we will hereafter show, we are dealing with an imaginary cause of action, and are forced to apply to it the principles that would govern, if the complaint, to the extent of its averments, set forth a good cause of action. The case then, as made by the pleadings, assimilates itself, under the first breach assigned, to an action for a malicious prosecution, without any averment that there had been an arrest, or that the prosecution was ended; and under the second breach, there is, as we have shown above, an equal failure to aver necessary facts, showing actual injury. Under such issue, the plaintiff would be entitled to recover. But the inquiry arises, what are legitimate data

[Irion et al. v. Lewis.]

for the assessment of damages in such case? Manifestly, the plaintiff, complaining of the loss of his property, by the alleged corrupt tampering with the jury charged in the complaint, can not be permitted to claim and recover damages for expense incurred by him, in the further litigation of the claim in the Circuit Court, to which the proof tends to show he carried it by *certiorari?* This would present the singular anomaly of a recovery of the value of his property as lost to him, and also the expenses afterwards incurred by him in attempting to regain, and possibly regaining the same property; for the record informs us the suit is still pending in the Circuit Court, and we cannot know that he will not be successful in that suit. In the absence of an averment in the complaint that a verdict was rendered against plaintiff in the trial before the justice of the peace, we think the plaintiff should not have been allowed to prove the value of the property in controversy, as an element of damages in this suit; and in the absence of an averment that the suit, carried by *certiorari* to the Circuit Court, had been there decided in plaintiff's favor, we think the expense incurred in such suit could form no legitimate basis of damages recoverable in this suit. Neither of these inquiries falls within the purview of the issue joined in this suit.

What we have said above shows that the Circuit Court, under the issues formed, erred in permitting evidence to go to the jury of the value of the property in controversy, and of the expense incurred in prosecuting the claim suit in the Circuit Court. The court also erred in some of the charges refused. We deem it, however, unnecessary to specify the errors more particularly, as it is not probable this suit will be again tried on the present pleadings.

3. Justices of the peace are required to give bond, before entering on the duties of their office.—Rev. Code, § 840. The condition is, "faithfully to discharge the duties of such office, during the time he continues therein, or discharges any of the duties thereof."—Rev. Code, § 157. Such bond is obligatory on the principal and sureties, "for the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office, as by the failure to perform, or the improper or neglectful performance of those duties imposed by law."—Rev. Code, § 169.

The duties of a justice of the peace, under our statutes, are partly judicial, and partly ministerial. In *Lester v. Governor*, 12 Ala. 624, the court left the question undecided, "whether the condition of a bond of a justice of the peace binds the sureties to answer for the official malversation of their principal, where he acts in a judicial capacity, or

VOL LVI.

whether it was not intended as a security for the performance of his ministerial duties only." We find no case, in our own reports, which, in terms, declares the extent of a justice's liability on his bond; whether it embraces any act done. judicially, or is confined to mere ministerial functions. In *Hamilton v. Williams*, 26 Ala. 527, the question presented was, the extent of liability of a judge of the County Court, on his official bond as such. The condition of the bond was "for the faithful performance of the duties assigned him"; and such bond was suable "for any injury, waste, or damage, sustained in any estate, in consequence of any neglect or omission of taking good and sufficient security from guardians, executors, or administrators." The statute authorized the judge of the County Court to require guardians to give *additional security*, when such court at any time "shall know, or have cause to suspect, that the securities of the guardian, or any of them, are in failing or dubious circumstances." The declaration alleged, that the guardian's sureties had become insufficient and insolvent, and had removed, with their property, beyond the limits of the State; "that the defendant [judge of the County Court] had notice of these facts, and was requested to require further security from said guardian, but he wholly neglected and failed to do so;" and said sum was thereby lost to plaintiff. There was a demurrer to the declaration, which was sustained. The decision was affirmed in this court. This court adopted the language from *Yates v. Lansing*, 5 Johns. 282, in which it is said, that "a judge is exempt from a civil suit, or indictment, for any act done, or omitted to be done by him, sitting as judge."

We hold that, in requiring official bonds of justices of the peace, it was not the intention of the legislature to increase their liability to civil suits, or to make actionable any official dereliction for which they were not, before that time, individually liable. To that extent, however, they and their sureties are liable on their bonds. It thus becomes necessary to inquire for what official acts or misconduct they may be held accountable, without reference to the stipulations of their bond.

4. In the case of *Lester v. The Governor, supra*, the question was, whether the justice of the peace was liable for taking insufficient sureties on an appeal bond; and it was held that, in the approval of such bond, the justice acts judicially; and he is not liable for errors of judgment he may commit therein. It was ruled, further, that a judge, within the pale of his jurisdiction, is not liable for a mere error of judgment, in doing, neglecting, or refusing to do a particular judicial act, in the exercise of judicial power; but, if he transcends

his powers, and usurps authority beyond and independent of his office, he can claim no protection from it, and may be charged as a trespasser.—See *Busteed v. Parsons,* at last term.

In the case we have been considering, and in some other cases, we encounter the expression, that an action will not lie for an act done judicially, unless it be done also corruptly, or from an impure motive. It should be added, also, that the act must be erroneous, as well as corrupt or malicious. In support of such action, even when the judicial error complained of is corrupt or malicious, few authorities can be found.

We approve and adopt the language of Ch. J. CHILTON, in the case of *Hamilton v. Williams, supra,* in which he says : "The wisdom and sound policy of this rule is apparent to every one who has correct views of the administration of justice; for, if a judge is liable to answer in a civil suit for his judicial acts, for every judgment he renders, at the instance of every party, who, blinded, it may be, by self-interest and partiality for his cause, but excited by the mortification of defeat, may see proper to sue him, he might be overwhelmed by litigation; the citizen would soon lose all respect for the law, and reverence for those who administer it; indeed, the independence of the judiciary, the great conservative department of every well-regulated government, would be destroyed, and no man would hold the office of judge, at the peril of being thus arraigned for every judgment he pronounces."

These highly conservative views should cause us to pause, and ponder well, before we declare a rule which will result in the frequent arraignment, for private redress, of judicial officers, for supposed or imputed partiality or favoritism in the administration of the law.

In the case of *Floyd and Barker,* 12 Rep. 23, "It was resolved, that the said Barker, who was judge of assize, and gave judgment upon the verdict of death against the said W. P., and the sheriff who did execute him according to the said judgment, nor the justices of peace who did examine the offender and the witnesses for proof of the murder before the judgment, were not to be drawn in question in the Star Chamber, for any conspiracy; nor any witness, nor any other person, ought to be charged with any conspiracy in the Star Chamber, or elsewhere, when the party indicted is convicted or attaint of murder or felony; and although the offender upon the indictment be acquitted, yet the judge, be he judge of assize, or a justice of the peace, or any other judge, being judge by commission and of record, and sworn to do justice,

cannot be charged for conspiracy, for that which he did openly in court as judge or justice of the peace: and the law will not admit any proof against this vehement and violent presumption of law, that a justice, sworn to do justice, will do injustice."

In a note, 1 East, 566, of the case of *Barnardiston v. Soame*, 2 Lev. 114, Lord Ch. J. North is reported to have said, "No action will lie against a judge, for what he does judicially, though it should be laid *falso, maliciose, et scienter*." In this case, a sheriff was sued for an act which was judicial in its character. Of similar import is the case of *Stowhall v. Ansell*, Comb. 116.

In 2 Saund. Pl. & Ev. 613, it is said, "In general, no action can be supported against a judge, or justice of the peace, acting judicially, and who has not exceeded his jurisdiction, however erroneous his decision, or malicious his motive."— See, also, *Garnett v. Ferrard*, 6 B. & C. 611; *Dicas v. Lord Brougham*, 6 C. & P. 249; *Brittain v. Kinnaird*, 1 Brod. & Bing. 441.

In the case of *Weaver v. Devendorf*, 3 Denio, 117, the suit was against certain parties for the exercise of authority judicial in its nature. It was charged in the declaration that their conduct in the premises was *willful* and *corrupt*. In delivering his opinion, Beardsley, J., stated, that he might rest his judgment on the ground that there was no evidence that the defendants acted maliciously. He added, that he preferred to "place the decision on the broad ground, that no public officer is responsible, in a civil suit, for a judicial determination, however erroneous it may be, and however malicious the motive which produced it. Such acts, when corrupt, may be punished criminally, but the law will not allow malice and corruption to be charged in a civil suit against such officer, for what he does in the performance of a judicial duty. The rule extends to judges from the highest to the lowest; to jurors, and to all public officers, whatever name they may bear, in the exercise of judicial power."— To same effect, see *Evans v. Foster*, 1 N. H. 377.

In *Lining v. Bentham*, 2 Bay, 1, a similar question arose in South Carolina. The judges were unanimous in holding, "that a special action on the case was not a proper remedy. If there had been any just cause of complaint on the part of plaintiff, it should have been preferred by way of indictment in the Court of Sessions; and if he had been convicted of corruption, or oppression, in his judicial capacity as a magistrate, it would have been the duty of the court to punish him, by fine or imprisonment, or both, according to the nature of the offense."

[Costley v. Allen.]

The able opinion of Senator Platt, in the great case of *Yates v. Lansing*, 9 Johns. 414, is a very exhaustive discussion of this subject; and he comes to substantially the same conclusion, as that announced above. And the same doctrine is maintained in the following authorities: *Steele v. Dunham*, 26 Wis. 396; *Yates v. Lansing*, 5 Johns. 382; *Wilson v. The Mayor*, 1 Denio, 599; *Cunningham v. Bucklin*, 8 Cow. 178; *Barhyte v. Shepherd*, 35 N. Y. 242; Broom's Leg. Max. m. p. 62; *Jordan v. Hanson*, 49 N. H. 202; *Little v. Moore*, 1 Southard, 74. But see *Phelps v. Sill*, 1 Day, 328; *Parmalee v. Baldwin*, 1 Conn. 317; *Peake v. Cantry*, 1 McCord, 107.

The rule which holds judicial officers amenable to criminal prosecution only, for corrupt abuse of authority, takes away from disappointed suitors all temptation to seek revenge in suits for damages; and leaves their crime, which is certainly a grave one, to be punished as other public offenses are. We think both the number and weight of authorities support this view, and we adopt it.

Reversed and remanded.