# Kearney *v.* Kling,

*Action on Guaranty for Performance of Charter Party.*

1. *Issue on defective plea.*—When issue is joined on a defective plea, and the evidence clearly establishes its truth, the court should instruct the jury, on request, to find for the defendant if they believe the evidence, leaving the plaintiff to ask a repleader.

2. *Cross errors neutralizing each other.*—There possibly may be conditions in which this court would hold that an error prejudicial to the appellant was neutralized by another error in his favor, and on that account refuse to reverse; but, to justify such ruling, it must affirmatively and clearly appear that no injury was done; and this does

[Kearney v. Kling.]

not appear when the record does not satisfactorily show that all the meritorious questions in the case were presented and decided in the court below.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by August Kling against Philip Kearney, and was commenced on the 17th February, 1890. The action was founded on the defendant's written guaranty of the performance by Peter Burke, as charterer of the steamboat *Lillie*, of all the stipulations and obligations imposed on him by the charter-party, which was in these words:

"State of Alabama, }  This charter-party, entered into Mobile County. }  by and between August Kling, owner of the steamboat *Lillie*, of the first part, and Peter Burke of the second part, witnesseth: (1.) August Kling, of the first part, agrees to charter to Peter Burke the steamboat *Lillie*, for the term of five (5) months, at and for the sum of $60 per month, payable monthly, which said Burke doth agree so to pay. (2.) It is hereby agreed that the said Peter Burke shall assume all liabilities of any and all kinds arising from or suffered by the said *Lillie* during the continuance of this charter-party. (3.) The said Burke is to insure the said *Lillie*, if she can be insured, in and for the benefit of said August Kling, for the sum of $1,500, he, the said Burke, paying all the premiums on said insurance policy; and said policy is to be delivered to the said Kling within two weeks from the signing of this charter-party. (4.) It is expressly agreed and understood that the said Burke shall not run said *Lillie* into debt; that he is to create no debts or liabilities on said vessel of any kind; and he does hereby covenant and agree to keep the said vessel free from any and all debts of any kind, and to hold said August Kling and said vessel harmless from any and all debts or liabilities that may or shall be created, or sustain [ed] or accrue, during the continuance of this charter-party. (5.) The said Burke doth agree to return the said steamboat *Lillie* to August Kling, in the city of Mobile, State of Alabama, upon the expiration of this charter-party, in the same condition as when received, ordinary wear and tear excepted. If said *Lillie* should sink, the said Peter Burke is to do all in his power to raise her. (6.) It is mutually agreed between the parties, that if said Peter Burke, at any time during the continuance of this charter-party, should conclude to purchase the said steamboat *Lillie*, the said August Kling doth hereby agree to sell her to him for the sum of

$1,000 in cash ; and it is understood that, in that event, the amount said Burke shall have paid said Kling as charter money shall be allowed to him as so much paid on the one thousand dollars. To all of which we hereunto set our hands and seals, Sept. 14th, 1889." (Signed by both parties.)

The defendant's guaranty, also dated September 14th, 1889, was in these words: "For and in consideration of the chartering or letting. of such steamboat *Lillie* by the said August Kling to the said Peter Burke, and for the sum of one dollar, I hereby become surety for the punctual payments of the said $60 per month, and the performance of the agreements and covenants in the above written agreement or charter mentioned, to be paid and performed by Peter Burke ; and if any default shall be made therein, I do hereby promise and agree to pay unto said August Kling such sum or sums of money as will be sufficient to make up such deficiency, and fully satisfy the conditions of the said agreement, without requiring any notice of non-payment, or proof of demand being made. Given under my hand," &c.

The opinion states the other material facts.

PILLANS, TORREY & HANAW, for appellant.

OVERALL & BESTOR, *contra*.

STONE, C. J.—(The reporter will set out a copy of the contract of lease, or charter-party, by which Kling let or hired the steamboat "Lillie" to Peter Burke, and a copy of the guaranty entered into by Kearney as Burke's surety.)

The complaint contains two special counts, and each count sets out *in extenso* a copy of the contract between plaintiff and Burke, and a copy of Kearney's guaranty of Burke's faithful performance. Burke leased the boat from Kling September 14, 1889, was to man and run her on his own account, and return her at the end of the lease, February 14, 1890, in the same condition as when received, "wear and tear excepted."

No ruling appears to have been had on the first count, and we will not notice it. The case was tried on the second count, and the only breach assigned in it was and is, "that said Burke has committed a breach of said contract or charter-party in this, that he has failed and refused to return said steamboat Lillie to plaintiff at Mobile, Alabama, after the expiration of said charter-party." There was a demurrer to the complaint, assigning grounds; but as there

is no assignment of error which brings up the ruling on the demurrer, we will not consider it.

Defendant Kearney then filed eight pleas to the complaint. The *first* was, that at the time of the charter the steamboat *Lillie* was not river-worthy, and was not fit for carrying freight and passengers up and down the Mobile and Tombigbee rivers. *Second*, that in consequence of said river unworthiness, and not from any peril of the navigation, said steamboat sprung a leak, and was lost on her first voyage. *Third*, that by said charter-party Kling warranted that the steamboat "was in all respects fit and suitable in strength, structure and condition to carry a cargo in the river trade;" and defendant then negatived these qualities, and averred that on her first trip, in less than a month after the contract, from no peril of the navigation, but from her own unfitness and river-unworthiness, she sank and was lost. *Fourth* plea avers that, by force of the contract, plaintiff was bound to see that the boat was river-worthy and in suitable condition for the service, and neglected to do so; and that in less than a month the boat was lost in consequence of her own river-unworthiness. *Fifth*, that the boat sunk and perished in less than a month after she was chartered, before any hire had accrued. *Sixth*, same as fifth, with the additional averment that the boat was lost without the fault of Burke or defendant. *Seventh*, that the boat was lost on her first voyage, from no peril of the river, but from inherent weakness and river-unworthiness, and that it was not in Burke's power to raise her. *Eighth*, that the steamboat, by her own inherent weakness and river-unworthiness, was rendered incapable of being returned to plaintiff.

Plaintiff demurred in gross to the first, second, third, fourth, seventh and eighth pleas of defendant, "raising the question of river-unworthiness." He assigned grounds of demurrer: *First*, "because by the terms of said contract of charter-party defendant's principal hired said boat as she was, and expressly agreed to return her to plaintiff in same condition as when received." *Second* assignment is not materially different from first. *Third* assignment denies that by the terms of the charter-party there is any warranty of the river-worthiness of the steamboat. *Fourth* assignment is substantially like the first and second. Plaintiff also demurred "to the fifth and sixth pleas, because they present no issue of law or fact." The court overruled these demurrers, and the plaintiff then took issue on the pleas.

The contract, or charter-party, contains no express guaranty, or other provision in reference to the soundness or

river-worthiness of the steamboat *Lillie*.  If there was any guaranty, it was one implied from the nature of the contract.

We have stated above that the only breach of Burke's contract stipulations which is assigned in the second count is, that he failed and refused to restore the steamboat to Kling.  The contract, or charter-party, expressly imposes many duties on Burke.  We mention only two of them.  "*Third:* The said Peter Burke is to insure the said '*Lillie*,' if she can be insured, in and for the benefit of said August Kling, for the sum of fifteen hundred dollars; he, the said Burke, paying all the premiums on said insurance policy, and said policy to be delivered to said Kling within two weeks from the signing of this charter-party. . .  "*Fifth:* The said Peter Burke doth agree to return the said steamboat '*Lillie*' to August Kling, in the city of Mobile, State of Alabama, upon the expiration of this charter-party, in the same condition as when received, ordinary wear and tear excepted.  If said '*Lillie*' should sink, the said Peter Burke is to do all in his power to raise her."

The testimony without conflict surely proved the truth of defendant's fifth plea.  The only averment of fact set up by that plea in bar of plaintiff's action was, "that said vessel sunk and perished before a month had run and any payment of hire had accrued."  On this plea plaintiff had taken issue; and when its truth was proved, defendant was entitled to a verdict.  Defendant had in writing requested the court to charge the jury, that if they believed the evidence they must find for the defendant; and the court had refused to so charge.  This was excepted to, and is assigned as error. In the then state of the pleadings, this charge ought to have been given.—*Crescent Brewing Co. v. Handley*, 90 Ala. 486.

This plea had been demurred to by plaintiff, and the demurrer overruled.  The plea being insufficient, if defendant had succeeded in the court below, and plaintiff had appealed, we would have reversed the judgment of the Circuit Court overruling the demurrer to the fifth plea.  So, if defendant had succeeded in obtaining a verdict on the fifth plea, it is not impossible that plaintiff would have moved for a repleader.—*Mudge v. Treat*, 57 Ala. 1; *Irion v. Lewis*, 56 Ala. 190; *Ga. Pac. Railway Co. v. Propst*, 90 Ala. 1.  In view of these principles, there possibly might be conditions in which we would hold that one error had neutralized the other, and on that account refuse to reverse.  To justify such possible ruling, it would be necessary for the record to show affirmatively and clearly that no injury was done.  The record before us is not in a condition to authorize us to make that

statement. It is not satisfactorily shown that all the meritorious questions which arise out of this transaction have been raised by the pleadings, or passed on in the court below. We state some inquiries which suggest themselves, which should be probably considered on a second trial; but we must not be considered as intimating a positive conviction in regard to them.

The contract being in writing, all its provisions must be taken into the account in giving it its proper interpretation. The inquiries we suggest are: *First*, does the contract impose on Burke an unconditional liability to return the vessel at the expiration of the lease? Does not the clause, "If said '*Lillie*' should sink, the said Peter Burke is to do all in his power to raise her," relieve him of such absolute liability? *Second*, does not that clause impose on Peter Burke the duty of doing all in his power to raise the vessel if she sunk, or to show that such efforts would be fruitless, and that she could not be raised? *Third*, was it not Burke's duty to insure the vessel before starting her on a voyage, or to show he could not obtain insurance on her; and are not the two weeks allowed for delivering the policy confined to the mere act of delivery, without enlarging the time for suing out the policy?

Reversed and remanded.