# Busteed *v.* Parsons.

## *Trespass for False Imprisonment.*

54   393
113   329
115   589

1. *Judge; for what, civil action will not lie against.*—A civil action will not lie against a judge of a superior court of general jurisdiction, for acts done in his judicial capacity; nor where he has jurisdiction of the subject matter, for errors of judgment in determining that the facts of a particular case bring it within that jurisdiction.

2. *Superior courts; what are, within the meaning of the rule*—The courts of the United States are of limited, but not of inferior jurisdiction; and the same principles which forbid the judges of superior courts of general jurisdiction from being called in question in a civil action, for acts done in a judicial capacity, apply with equal force to the judges of the courts of the United States.

3. *Same.*—The district court of the United States is a court of record of high dignity, having jurisdiction of nearly all crimes against the United States, and among them of violations of the "Act to enforce the rights of citizens of the United States to vote in the several States," &c.; and it being within the cognizance of the judge thereof to investigate a charge of such offense, his error in determining that an affidavit charged an offense under that act, and thereupon causing the accused to be arrested on warrant, will not subject the judge to a civil action for false imprisonment.

APPEAL from City Court of Montgomery.

Tried before P. T. SAYRE, Esq., an attorney of the court, selected by the parties on account of the incompetency of the presiding judge.

The appellee, Lewis E. Parsons, brought his action of trespass against Richard Busteed, the appellant, to recover two hundred and fifty thousand dollars damages of the latter, for "maliciously and without probable cause therefor, causing the plaintiff to be arrested and imprisoned, on a charge of banding and conspiring with one Lazarus J. Williams and others to deprive one William H. Hunter of his right as a member of the General Assembly of Alabama to vote for a United States senator for said State of Alabama, for three days, to-wit: on the 20th, 21st and 22d days of February, 1873."

The defendant pleaded not guilty, and also a special plea as follows: That on the 19th day of February, 1873, one William H. Hunter made and subscribed before E. C. V. Blake, clerk of the district court of the United States for the middle district of Alabama, a United States commissioner for said middle district, an affidavit, "that within twelve days last past, within the county of Montgomery and State of Alabama, and in said middle district of Alabama, Lewis E. Parsons, then and still being Speaker of the House of Rep-

[Busteed v. Parsons.]

resentatives of the State of Alabama, and a member of said House, and L. J. Williams, then and still being a member of said House of Representatives, and with many others, whose names are now unknown, in the district aforesaid, did band and conspire together with intent to injure, oppress, threaten and intimidate W. H. Hunter, who then was, and still continues to be, a citizen of the United States, and a member of the House of Representatives of the General Assembly of Alabama, and desired to exercise the right or privilege to vote as such member of the House of Representatives, during the present session of said General Assembly, and in accordance with an act of congress, entitled "an act to regulate the time and manner of holding elections for senators in congress," approved July 25th, 1866, as well as in accordance with an act of congress entitled "an act to enforce the right of citizens of the United States to vote in the several States in this Union, and for other purposes," approved May, 31st, 1870, for a senator in the Congress of the United States from the State of Alabama, as the successor of George E. Spencer, whose term of office as senator will expire on the 4th day of March, 1873, as well as other citizens of the United States, who were then, and still continue to be, members of the said House of Representatives of the said General Assembly, and desirous as such members to exercise the said right or privilege to vote for a senator as successor to said Spencer during the present session of the said General Assembly, and in accordance with the said several acts of Congress, and with intent to prevent, or hinder the full exercise and enjoyment by said W. H. Hunter, as well as by said other citizens of the United States, and of said State of Alabama, who, like said W. H. Hunter, then were, and still continue to be, members of the said House of Represenatives and of said General Assembly, and desirous as such to vote for a senator in Congress from Alabama, as successor of said Spencer in said office of senator, of the right or privilege of voting as members of said House of Representatives of said General Assembly, during the present session of said General Assembly and in accordance with the said acts of Congress, for a senator in Congress from Alabama, as the successor of said Spencer, which right or privilege to vote during the present session of said General Assembly, and in accordance with the said several acts of Congress, is a right or privilege granted or secured to said W. H. Hunter, as well as to said other citizens, who, like said W. H. Hunter, were, and still are, members of said House of Representatives and of the said General Assembly, by the Constitution and laws of the United States." The plea then goes on to aver that

at and before the making of said affidavit, "defendant was judge of the district court of the United States for said middle district of Alabama, and that said district court had jurisdiction of all crimes and offenses committed within said middle district, against the provisions of the act of Congress of the United States, entitled "an act to enforce the right of citizens of the United States to vote in the several States of this Union, and for other purposes," approved May 31st, 1870, and that the said affidavit was presented to him as such judge, in open court, while he was presiding as judge of the said district court, and application made to him as said judge, by W. H. Hunter, to exercise his authority and jurisdiction as judge of said district court therein for the enforcement of the provisions of said act of Congress of the United States, approved May 31st, 1870, and which application was made to him on the 19th day of February, 1873, and that said affidavit being presented, and said application made to him as aforesaid, he, as such judge of such district court, and in the exercise of his power and authority as such judge, and not otherwise, on the 19th day of February, 1873, signed and issued in open court, and whilst presiding as judge of said district court," a warrant for the arrest of plaintiff, which warrant was in the usual form, &c., and the marshal, to whom it was directed, arrested plaintiff thereon, and "that said arrest is the arrest and imprisonment complained of," &c.

The plaintiff demurred to the special plea, on the ground that the matters and things set forth in said affidavit of said W. H. Hunter, set forth in the plea, did not constitute any offense upon the part of plaintiff, against the laws of the United States, of which the defendant, as judge of the United States district court, had jurisdiction. The demurrer was sustained, and thereupon a trial was had upon issue joined on the plea of not guilty, which resulted in verdict and judgment for the plaintiff for $2,000 damages.

The affidavit of Hunter, the warrant of arrest thereon issued by defendant, together with the return, were read in evidence, and it was shown that defendant was judge of the district court of the United States for the middle district of Alabama, at the time the affidavit was made, and was holding court when said affidavit was presented to him by Samuel F. Rice, an attorney of that court, who applied for a warrant or writ of arrest against the plaintiff; that defendant thereupon caused the writ to issue and plaintiff was arrested by virtue thereof, and discharged upon his own recognizance, for his appearance next day, and upon examination before defendant of witnesses the next day and the day thereafter,

[Busteed v. Parsons.]

plaintiff was discharged.    This was all the evidence in relation to the matters to which exception was reserved.

The court charged the jury, if they believed from the evidence that on the 19th day of February, 1873, W. H. Hunter made the affidavit, read in evidence, and defendant, on that affidavit, as judge of the district court of the United States, &c., issued the warrant for the arrest of plaintiff, and plaintiff was arrested on such warrant, the defendant was guilty of a trespass and the verdict must be for the plaintiff. The defendant excepted to the giving of this charge, and also to the refusal of the court to give a charge requested by him, in writing, which asserted, in substance, that if the arrest was made under the facts stated, the jury should find for the defendant.

The charge given, and the refusal to charge as requested, and the action of the court in sustaining the demurrer to the special plea, are now assigned for error.

DAVID CLOPTON, and JOHN A. ELMORE, for appellant.—The acts which constitute the alleged trespass, were performed by the defendant in the exercise of his authority and duty as judge, while the court was in session, and done in open court.    The court had jurisdiction of the alleged offense, and where there is jurisdiction of the subject matter, there is no liability on the part of the judge.—13 Wall. 351.

When the affidavit was presented, he was called upon to exercise his judicial powers and judgment, whether or not an offense, under the act of Congress, had been committed.    If, in his judgment, the offense had been committed, his duty was to issue the warrant, and he is not civilly liable for mere mistakes of judgment.—*Mills v. Collett*, 6 Bing. 85; 19 Eng. Common Law Reports, 11.    Where the judge of a criminal court, invested with general criminal jurisdiction over offenses committed within a certain district, holds a particular act to be an offense, which is not, by law, made an offense, and proceeds to the arrest and trial of a party charged with such act, no personal liability to a civil action for such acts would attach to the judge; although these acts would be in excess of his jurisdiction and of the jurisdiction of the court held by him.    These are particulars for his judicial consideration, whenever his general jurisdiction over the subject matter is invoked.—13 Wall. 352.

BLAKEY & FERGUSON, *contra*.—Any judge or magistrate who imprisons a person, or causes his property to be seized, is a trespasser, unless the proceedings before him show that he,

VOL. LIV.

as such judge, or magistrate, had jurisdiction.—7 Barn. & Cress. 536; 6 Adol. & Ell. 729; 6 Wheaton, 119.

The facts set forth in Hunter's affidavit showed that the court had no jurisdiction, and the judge, in granting the warrant, became a trespasser—the protection that the law gives him ceased with his jurisdiction.—*Duckworth v. Johnson,* 7 Ala.; *Coyles v. Withers,* 36 Ala.

The U. S. district court had no jurisdiction whatever over the subject matter. The offense, which it is alleged Parsons had committed, is neither within the letter nor spirit of the act of Congress under which jurisdiction is claimed; nor can criminal jurisdiction be given by implication.

The district court of the United States is a statutory court, and, therefore, of limited jurisdiction. It has only such power as is conferred upon it by Congress. It has *general jurisdiction of nothing*—but has special jurisdiction of such matters as are given to it by Congress.—Kent's Commentaries, Vol. 1, 364, 373, 387.

MANNING, J.—Appellant was sued in this action of trespass for "maliciously and without probable cause therefor, causing the plaintiff [appellee] to be arrested and imprisoned on a charge of banding and conspiring with one Lazarus J. Williams and others to deprive one William H. Hunter of his right, as a member of the General Assembly of Alabama, to vote for an United States senator for said State." There is no other averment in the complaint.

To this defendant pleaded—1st, Not guilty. 2d. That he was judge, at the time, of the District Court of the United States, and was holding the same in and for the Middle District of Alabama, at Montgomery; and that, while doing so and in open court, said William H. Hunter, upon his affidavit, a copy of which is set forth in the plea, prayed the court for a warrant for the arrest of appellee, Parsons, and one Williams, for having banded and conspired with each other and with other persons unknown, to injure, oppress, intimidate and threaten him, Hunter, with intent to prevent him and others who, with him, were members of the General Assembly of Alabama from voting as such, as they were entitled and desired to do, for a senator from Alabama in the Congress of the United States, in violation of an act of Congress, approved July 25th, 1866, "To regulate the time and manner of holding elections for senators in Congress"—and also of "An act to enforce the right of citizens of the United States to vote in the several States of this Union and for other purposes," approved May 31st, 1870; that said District Court had jurisdiction of all crimes and offenses against the

provisions of the act last aforesaid committed within the said Middle District; and that as judge thereof, and not otherwise, and upon said affidavit and application so presented, he caused to be issued a warrant, or writ of arrest, a copy of which is set forth in the plea, commanding the marshal to bring appellee and said Williams before him as such judge—by virtue of which warrant or writ the marshal arrested appellee; and that the arrest so made is the act complained of in this cause as a trespass.

A demurrer was interposed, on the ground that the matters set forth in the affidavit of Hunter, contained in the plea, did not show that appellee, Parsons, had committed any offense against the laws of the United States of which the defendant, as judge of the District Court of the United States, had jurisdiction; which demurrer was sustained, and the parties went to trial upon issue to plea of not guilty.

There may have been (and it is said there were) exasperating circumstances of a political nature in this transaction; but if there were the record does not disclose any. And, although it is mentioned in Hunter's affidavit, that appellee was Speaker of the House of Representatives of Alabama, it is not alleged in the pleadings or shown by the evidence, that such was the fact; and, of course, it is not shown that there was any interference with his free action in that office. No merely political matter constitutes any part of the case.

The question presented for our consideration is, whether or not appellant, the judge of the district court aforesaid—for his participation as such judge in the proceedings upon the complaint of Hunter—is liable *civiliter* to the plaintiff below in damages.

By section 3 of an act of August 23, 1842, (5 Stat. at Large, 517), it was enacted that "the District Courts of the United States shall have concurrent jurisdiction with the circuit courts of all crimes and offenses against the United States, the punishment of which is not capital." By section 8 of the act above referred to of May 31, 1870, "To enforce the right of citizens of the United States to vote," &c., it is enacted that "the District Courts of the United States, within their respective districts, shall have, exclusively of the courts of the several States, cognizance of all crimes and offenses committed against the provisions of this act." And, as judge of said district court, defendant had authority to cause any person duly charged with the commission of any crime or offense against the United States, to be arrested, and make inquiry thereof, and cause the offender to be imprisoned or bailed, if the evidence should, in his opinion, justify it, for

[Busteed v. Parsons.]

trial before such court of the United States as had cognizance of the offense.

The question of the liability of a judge to the action of trespass by a person aggrieved by his action, was discussed with great learning and ability in *Yates v. Lansing*, (5 J. R. 282,) by KENT, Ch. J.; and that case has ever since been considered as having conclusively determined the law on that subject. In reviewing the precedents, he cited that of *Floyd v. Barker*, (12 Co. 23,) in which Sir EDWARD COKE and all the judges agreed, "that if the judges of the realm who have the administration of justice, were to be drawn in question, except it be before the King himself, it would tend to the slander of justice, and those who were most sincere would not be free from continual calumniations." In *Hammond v. Howell*, (1 Mod. 184; 2 Mod. 213,) of which Chief Justice KENT remarks, "the act of the defendant was admitted to have been illegal, and no doubt it struck the court as a high-handed and arbitrary measure,"—the judges said that "no authority, or semblance of an authority, had been urged for an action against a judge of a court of record for doing any thing as judge; that this was never before imagined, and no action would lie against a judge for a wrongful committal, any more than for an erroneous judgment; that though the defendant acted erroneously, he acted judicially, and if what he did was corrupt, complaint might be made to the King, and if erroneous it might be reversed." After referring to other English cases—in one of which that "sound judge and inflexible patriot," Sir John Holt, made similar observations—Chief Justice KENT alludes to that of *Phelps v. Sill*, (1 Day's Cases in Error, 315,) in which the Supreme Court of Connecticut hold, that "it was a settled principle that a judge is not to be questioned, in a civil suit, for doing, or for neglecting, or refusing to do, a particular official act in the exercise of judicial power,"—and add that "no man would accept the office of a judge, if his estate were to answer for every error in judgment, or if his time and property were to be wasted in litigations with every man whom his decisions might offend." Chief Justice KENT goes on to say : "Judicial exercise of power is imposed upon the courts. They *must* decide and act according to their judgment, and therefore, the law will protect them." And he concludes his opinion with the just observations, that "Whenever we subject the established courts of the land to the degradation of private prosecution, we subdue their independence. Instead of being venerable before the public, they become contemptible; and we thereby embolden the licentious to trample upon every thing sacred in society, and to overturn those institutions

[Busteed v. Parsons.]

which have hitherto been deemed the best guardians of civil liberty."

This decision of the Supreme Court of New York, affirmed by the Court of Errors, was approved in this State in a case in which a judge of probate was sued on his bond for failing to require the guardian of the plaintiff to renew his bond, or to give further security, when that first given had become insufficient. The determination of this last matter was held to be a judicial function. In referring to this decision in *Yates v. Lansing*, CHILTON, C. J., said: "The wisdom and sound policy of this rule is apparent to every one who has correct views of the administration of justice; for if a judge is liable to answer in a civil suit for his acts,   *   *   *   *   *   the citizens would soon lose all respect for the law and reverence for those who administer it. Indeed, the independence of the judiciary, the great conservative department in all well regulated government, would be destroyed, and no man would hold the office of judge, at the peril of being thus arraigned for every judgment he pronounces."—*Hamilton v. Williams*, 26 Ala. 529.

It would be but superfluous to add any thing of our own, to views so well expressed by others.

If it be objected that such a doctrine might be used as a shield for the protection of unscrupulous, arbitrary and corrupt men in judicial offices, it must be admitted that to some extent this is true. An immunity which is essential to the encouragement and support of good men in the independent and impartial exercise of their authority, and performance of their duties as magistrates, by means whereof only the peace and good order of society can be preserved, a bad man in office may avail himself of, for exemption from deserved penalties.

But as said by Ch. Baron KELLY, of the Court of Exchequer, in the late case of *Scott v. Stansfield*: "This provision of the law is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." Said MARTIN, Baron, on the same occasion: "What judge could try a case with any degree of independence, if he was to be afterwards subject to have his conduct in the administration of justice commented upon to a jury, and the propriety of it determined by them? It appears to me that the opinion expressed by Chief Justice KENT, in the American case cited, puts this matter upon its proper foundation, and states that which is both sound law and good sense in reference to it." "It does not follow," added CHANNELL, Baron,

"from the decision which we now pronounce, that a county court judge may so misconduct himself with impunity. . . The Lord Chancellor may, if he think it expedient, remove him from such office; but no action will, in my opinion, lie against him for any thing done in his judicial capacity."— *Scott v. Stansfield*, 3 Law Rep. Exch. 220.

Finally, the Supreme Court of the United States, in *Bradley v. Fisher*, say: "In this country the judges of the superior courts of record, are only responsible to the people from whom they receive their commissions, for the manner in which they discharge the great trusts of their office. If in the exercise of the powers with which they are clothed as ministers of justice, they act with partiality, or maliciously, or corruptly, or arbitrarily, or oppressively, they may be called to account by impeachment, and suspended or removed from office."—13 Wall. 335.

But on behalf of appellee (plaintiff below) it is further insisted, (1st) that appellant was a judge of a court of such limited and special statutory jurisdiction that the doctrine of the cases we have cited is not applicable to him—and (2d) that he was wholly without jurisdiction of the subject matter of the charge made by Hunter against appellee, instead of acting in excess merely of his jurisdiction; and it is argued that the class of cases by which appellant should be judged, are such as those of *Sasnett v. Weathers*, 21 Ala. 673; *Coyle v. Withers*, 36 Id. 320; *Bramwell v. Pennock*, 7 B. & C. 526; *Kitchen v. Shaw*, 7 Ad. & El. 729.

We do not concur in these views. The courts of the United States are courts of limited, but not of inferior jurisdiction. Their judgments are conclusive between the parties until reversed, although the jurisdiction do not appear upon the record.—*McCormick v. Sullivant*, 10 Whea. 192; *Ex parte Watkins*, 3 Pet. 193; *Kennedy v. Ga. State Bank*, 8 How. 586.

The district court, as we have seen, has jurisdiction of almost all crimes against the United States, and is a court of record, of high dignity and extensive authority. Its judge is entitled to invoke the same rules of law for his protection that are applicable to judges of superior courts in the several States. Crimes and offenses against the provisions of the act of Congress of May 31st, 1870, above referred to, were within the jurisdiction of the court of which appellant was judge, and within his cognizance as judge thereof for inquiry. Hunter complained, under oath, that an offense prohibited by that statute had been committed by appellee against him. The affidavit did not specify the means by which the object of the conspiracy to intimidate, injure and oppress him, with intent to prevent him from voting for senator, which was

[Busteed v. Parsons.]

charged therein, was to be accomplished; but it charged such an offense, and that it was in violation of the statute. Able counsel, whose duty it was, not to sue out such a warrant, unless he believed that the law and facts, under the construction which the federal courts would put upon the statute, made out the offense, presented the affidavit and made the application. Whether or not the facts alleged, or to be proved, showed that the offense was committed, was a question to be determined by a judicial consideration of the law and evidence; and this was to be done without aid from the decision since made, of the federal supreme court in the Grant Parish case. The question was clearly within the cognizance of appellant; and whether his decision of it was right or wrong, he was not responsible therefor in a civil action to any individual.

In the similar case of *Mills v. Collett,* (6 Bingh. 11,) where a magistrate in England was sued for having committed the plaintiff for a felony upon an affidavit of facts which did not constitute such an offense, TINDALL, C. J., held: "If a party charged with an offense be brought before a magistrate, he must exercise a judgment on the case, and he is not liable for a mere error of judgment."

And in *Bradley v. Fisher,* (supra.) Judge FIELD said: "Where jurisdiction over the subject matter is invested by the law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised, are generally as much questions for his determination, as any other questions involved in the case, although upon the correctness of his determination in these particulars, the validity of his judgments may depend. . . . . . Indeed, some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine, relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised. And the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person, applies in cases of this kind and for the same reasons."

The city court erred in sustaining the demurrer to appellant's second plea—and in the charge given, and in the refusal to charge as requested. Let its judgment be reversed and the cause be remanded.

STONE, J., not sitting.