[Woodruff v. Stewart.]

# Woodruff *v.* Stewart.

*Action for False Imprisonment.*

1. *Jurisdiction defined.*—Jurisdiction is the power to hear and determine a cause, and it exists whenever an officer or tribunal is by law clothed with the capacity to act upon the general, and, so to speak, the abstract question, and to determine and adjudge whether the particular facts presented call for the exercise of the abstract power.

2. *Municipal corporation; jurisdiction of mayor.*—When a person is brought before the mayor of a municipal corporation, charged with a violation of a by-law or ordinance of the corporation, the existence of a by-law or ordinance, established and promulgated by the proper authority prior to the commencement of the prosecution, is an essential element of his jurisdiction; but the reasonableness of the by-law or ordinance, while affecting its validity, is a question for his decision, and not a question affecting his jurisdiction in the particular case.

3. *Same; approval of ordinance by mayor.*—When the charter of a municipal corporation requires, that every ordinance passed by the board of aldermen shall be signed by the mayor, if approved by him, or, if disapproved, shall be passed over his veto by a two-thirds vote of a full board, it is not essential to the validity of an ordinance that it shall be signed by the mayor, when it is copied at length in the minutes of the board, which are signed by him, and which show that he voted for it on its passage by the board.

4. *Revised Code of city of Selma.*—Tested by the principle above declared, the 'Revised Code of the City of Selma," adopted by an ordinance on the 31st December, 1870, was legally adopted

5. *When action lies against judicial officer.*—A judicial officer, or person invested with judicial power, is not liable to a civil action for damages, at the suit of a person aggrieved by the exercise of that power in any particular case within the pale of his jurisdiction, though malice, or error, or both combined, may have entered into his decision.

APPEAL from the City Court of Selma.

Tried before the Hon. JONA. HARALSON.

This action was brought by H. H. Stewart against Noadiah Woodruff, to recover damages for an alleged false arrest and imprisonment, and was commenced on the 14th February, 1877. The arrest was under a warrant issued by the defendant, as the mayor of the city of Selma, on the 29th November, 1876, which was founded on an affidavit charging the offense of obstructing the side-walks of the city; and the imprisonment was under the judgment and sentence pronounced by the defendant on the hearing of that charge. The affidavit charged that the offense was committed by "H. H. Stewart & Co.," and the warrant was issued against them by that name, without any designation of the names of the individual partners. H. H. Stewart was arrested under the warrant, and appeared before said Woodruff as mayor, and

VOL. LXIII.

pleaded not guilty to the charge; and the said Woodruff rendered judgment and sentence against him, on the 4th December, 1876, in these words: "Judgment, guilty. Sentence, $25 fine, or fifty days labor on streets."

The pleadings in the case were somewhat complicated, but, as the case is presented in this court, they require no special notice. The defendant, "by consent, pleaded the general issue, with leave to give in evidence any matter of defense or justification which could be specially pleaded or replied;" and the cause was tried on issue thus joined. The defendant justified under an ordinance of the city of Selma, and the authority conferred on him as mayor by the charter and ordinances of the city. The ordinance which Stewart was charged to have violated is set out in the opinion of the court, which also states all the material facts connected with the adoption of the "Revised Code of the City of Selma," a compilation of laws embodying said ordinance. On objection by the plaintiff, the court refused to allow the said ordinance to be read in evidence to the jury, "but afterwards allowed it to be read as evidence, not as a law or ordinance of the city of Selma, but merely as a fact in mitigation of damages;" to which rulings exceptions were duly reserved by the defendant. After the exclusion of this ordinance as evidence, the defendant offered in evidence another ordinance in reference to obstructing the streets, which was embodied in a former compilation of the city laws, adopted on the 28th February, 1858; and this seems to have been admitted without objection. As to what was done or said on the plaintiff's trial before the mayor, both parties testified as witnesses, and there was some conflict in their testimony. As to the offense charged against the plaintiff in obstructing the streets, there was also some conflict in the evidence.

On all the evidence adduced, the court charged the jury, on the request in writing of the plaintiff, "If the jury believe the evidence, the plaintiff is entitled to recover, and the jury should find a verdict in his favor." The defendant excepted to this charge, and requested the court, in writing, to instruct the jury, "If the jury believe the evidence, they should find the issue in favor of the defendant." The court refused to give this charge, and the defendant excepted to its refusal. The charge given at the request of the plaintiff, and the refusal of the charge asked by the defendant, are now assigned as error.

Indorsed on the transcript is a memorandum, signed by the appellant's attorneys, in these words: "The appellant asks the court to consider the question of the jurisdiction of the mayor of Selma, under the facts in the record, to try and

sentence Stewart; and if the court finds the law to be that, under the facts in the case, the appellant, as mayor, had no jurisdiction to try and sentence the appellee, and that the appellant was not protected from this suit by his judicial position, then the appellant desires that the court will not consider minor questions, but will consider them as waived by the appellant."

SUMTER LEA, and with him PETTUS & DAWSON, for the appellant.—If Woodruff, as mayor, had jurisdiction of the subject-matter, jurisdiction over the person might be acquired by the consent of the defendant.—*Snow v. Ray*, 2 Ala. 344; *Ortez v. Jewett*, 23 Ala. 662; *Morningstar v. The State*, 52 Ala. 406; 2 Brickell's Digest, 161, § 52. If he had jurisdiction of the subject-matter, the defendant is not liable for a mistaken exercise of judgment.—Waterman on Trespass, vol. 1, 358; *Morrow & Wilson v. Bird*, 6 Ala. 834; *Burnett v. Craig*, 32 Ala. 734. The question of the case, then, is, whether the mayor had jurisdiction in the premises. The charter of the city of Selma, by its 25th and 62d sections, confers on the mayor jurisdiction to try all persons charged with violations of city ordinances; and the State constitution clothes him also with the jurisdiction of a justice of the peace. The plaintiff was charged with the offense of obstructing the side-walks of the city, and was tried for that offense; an offense clearly within the jurisdiction of the mayor, because conferred on him by the charter of the city, and an ordinance passed in pursuance thereof. If the ordinance in the Revised Code of the city was never legally adopted, then the prior ordinance of 1858 was never repealed, and governed the case. U. S. Digest, N. S., 1870, p. 507, § 22. The offense, moreover, was a misdemeanor at common law, and was within the jurisdiction of the appellant.—6 U. S. Digest, 560, § 28; Code, § 4447; *Hoole & Paullin v. Attorney-General*, 22 Ala. 194; 1 Russell on Crimes, ch. 30, § 2; Const. Ala., art. 1, § 9. As to the reasonableness of the by-law, see 6 East, 430.

BROOKS & ROY, and W. C. WARD, *contra.*—1. The ordinance, under which the plaintiff was prosecuted, was never enacted as prescribed and required by the city charter. It was never acted upon, or approved by the mayor, in his official capacity, as a co-ordinate branch of the municipal legislature; and his participation in the proceedings of the council, and his signature to the minutes, are not a compliance with the requisitions of the charter.—*Graham v. Carondolet*, 33 Mo. 262; 1 Dillon on Mun. Corp. § 265, notes.

2. If the ordinance had been legally and regularly adopted,

[Woodruff v. Stewart.]

it would nevertheless be void, because against common right, and manifestly unreasonable.—1 Dillon, M. C. §§ 253–61, and authorities there cited; *Ib.* §§ 581, 585; Shear. & Redf. on Negligence, §§ 366–67; Angell & Ames on Corp. §§ 347, 357, 360, 363; 35 N. H. 257; 44 N. H. 285; 4 Amer. Rep. 248; *Beroujohn v. Mobile,* 27 Ala. 60; 6 Ala. 901; 30 Ala. 461; 31 Ala. 562; 28 Ala. 577; 5 Cowen, 462.

3. The ordinance of 1858, if it can be invoked, is void for the same reasons.—Authorities last above cited. But that ordinance was repealed by the new charters subsequently adopted, which contain provisions inconsistent with and repugnant to it. Under the ordinance, the penalty is unlimited; under the new charter, no penalty can exceed $100. The ordinance can not be changed, to make it conform to the charter; and if the penalty is struck out, the ordinance becomes nugatory.—Dillon, M. C. § 272; *State v. Cleveland,* 3 R. I. 117; *Bowman v. St. John,* 47 Illinois, 337; *Ashton v. Ellsworth,* 48 Illinois, 299.

4. The mayor did not acquire jurisdiction by reason of the fact that the offense charged was a violation of the laws of the State. The attempt in the charter to give him jurisdiction to try offenders for violations of the State laws, is clearly unconstitutional; for, if valid, it would give him power to try offenders for any felony, without indictment, trial by jury, or due legal process. Nor can the grant of power be separated, or split up, so as to preserve any part of it.—*United States v. Reese,* 2 Otto, 221.

5. There being, then, no valid and operative ordinance or statute, under which the prosecution could be maintained, the mayor had no jurisdiction; the entire proceeding was null and void, and all who participated in it were trespassers.—*Duckworth v. Johnson,* 7 Ala. 578; *Noles v. State,* 24 Ala. 695; *Sasnett v. Weathers,* 21 Ala. 674; *Crumpton v. Newman,* 12 Ala. 199; 4 Gray, 73; 2 Gray, 120; 13 John. 444; 15 John. 493; 1 Wendell, 210; 5 Wendell, 180, 276; 13 Wendell, 46; 19 John. 39; 8 Cowen, 68; 6 U. S. Digest, 559, §§ 5, 6, 11; 11 Wendell, 94; 5 Ired. Law, 157; 2 Hilliard on Torts, § 6.

BRICKELL, C. J.—There are numerous exceptions to rulings of the City Court, but there are only two assignments of error. The *first* is, that the City Court erred in refusing, at the instance of the appellant, to charge the jury that, if they believed the evidence, they must find a verdict in his favor. The *second* is, that the City Court erred in charging the jury, at the instance of the appellee, if they believed the evidence, their verdict must be in his favor. It may be the evidence was not so free from conflict, so clear and undispu-

ted, or that there were inferences to be drawn from it, neces-
sary to support the appellee's action, which it was the exclu-
sive province of the jury to draw; and that the City Court
was, consequently, in error in giving the general charge. We
are relieved from considering that question, by the waiver of
appellant, indorsed on the record, of all other questions,
than the jurisdiction of the appellant, as mayor of the city
of Selma, upon the facts found in the bill of exceptions, to
cause the arrest, try, and sentence to punishment the appel-
lee, on a charge of obstructing the *side-walks* of the city, the
acts constituting the alleged wrongs for which the appellee
seeks to recover damages.

The case is thus resolved into a very narrow issue. The
duty and authority of the mayor of the city of Selma is very
clearly defined in the charter. So far as it is now involved,
it is expressed in these words in the 25th section : "to see
that the laws of the corporation be duly executed; and he
shall hold a court once in each day of the week, if necessary
(Sundays excepted), for the trial of all offenders against the
city laws and ordinances;" and more explicitly, and at large,
in the 62d section, which declares : "that the mayor, or either
of the councilmen of said city, shall issue process as a jus-
tice of the peace, against any person who is not in custody
of the city authorities, for offenses committed under this
act, and for a breach or violation of all or any of the by-laws
or ordinances of the said corporation, or of the laws of the
State, directed to any public officer of said corporation, who
shall bring the offenders, in pursuance of the said process,
before the mayor, or before any one or more of the council-
men; and the mayor, or councilman, shall proceed to try the
offender, and may examine such witnesses as may be offered,
and shall, if desired, subpœna witnesses; and in default of
their appearance, after service of subpœna, shall fine such
witnesses as may have been subpœnaed, and failed to ap-
pear, or render a good excuse, not exceeding twenty dollars,
to be enforced as other fines are enforced. The offenders and
the corporation shall have an opportunity to produce wit-
nesses; and the mayor, or councilman, trying said cause, after
hearing the testimony, shall pronounce such judgment as to
him shall appear just and legal. The mayor, or councilman,
trying such offender, shall have power to fine, or to imprison,
or to fine and imprison, or to sentence the offender to labor
on the streets or public works of the city, or for the city;
and in case the fine and costs are not paid, to require the
party thus in default to work out the fine and costs, under
the direction of the city officers; *Provided*, that no fine shall
exceed one hundred dollars, and no imprisonment, or work

on the streets or public works, or for the city, shall exceed ninety days."

It is plain, these provisions contemplate and authorize a proceeding in form and substance judicial, and that the grant is of judicial power. Plenary jurisdiction is conferred on the mayor of the city, to issue process for the arrest of any person, not in custody of the city authorities, who may be charged with a violation of any by-law or ordinance of the city, and to pronounce, after the appearance of the person charged, upon his guilt or innocence; and if he is adjudged guilty, to punish him by fine or imprisonment, or both; or to sentence him to labor; or, if a fine is imposed, which is not paid, to sentence him to work it out, under the prescribed limitations, which were not in this case exceeded. The *subject-matter* of the jurisdiction is the violation of an ordinance or by-law, which the governing, legislative body of the city have the power under the charter to enact; or, rather, a charge of such violation, for when the charge is made, the jurisdiction is called into exercise, and the mayor must adjudge whether the particular facts constitute a violation.

Jurisdiction is the power to hear and determine a cause; and it exists whenever an officer or tribunal is by law clothed with the capacity "to act upon the general, and, so to speak, the abstract question, and to determine and adjudge whether the particular facts presented call for the exercise of the abstract power."—*Hunt v. Hunt*, 72 N. Y. 229–30; *Lamar v. Gunter*, 39 Ala. 324. Limiting our observations to the circumstances of this case, an essential element of the jurisdiction of the mayor is a by-law, or ordinance of the city, established and promulgated prior to the commencement of the prosecution.

The mayor and councilmen of the city had adopted a "Revised Code" of the by-laws and ordinances of the city. The city had been an organized municipal corporation for many years, and its charter had been altered and amended, its corporate power enlarged and varied, by several special legislative enactments. This Code was adopted by ordinance on the 31st December, 1870, at an adjourned regular meeting of the board of mayor and councilmen, by a vote of *ayes and noes*, the mayor and five councilmen voting for its adoption, and two councilmen voting in the negative. The proceedings of the meeting are signed by the mayor, and countersigned by the clerk of the city council. When the ordinance was adopted, the charter approved October 10th, 1868 (Pamph. Acts, 1868, pp. 227–248), was of force; the 24th section of which provided, that "every ordinance, which shall have been passed by the board, shall be presented to the

[Woodruff v. Stewart.]

mayor, for his approval and signature; and if he approves and signs the same, it shall become a law; and if he should not approve it, he shall return it, with his objections, to the board; and at its next regular meeting, in case of his non-approval, or failure to return as aforesaid, a vote of two-thirds of the full board shall make it a law."

This Code, it is fair to presume, was a compilation of former ordinances, so far as they were consistent with the new charter, the constitution and laws of the State, the new and changed condition, civilly and politically, of the people of the State; as well as the introduction of new by-laws and ordinances, which the provisions of the new charter required. As containing the body of the law of the city as established and promulgated by the governing, legislative power, it had been uniformly recognized and acted upon, from the time of the adoption of the ordinance we are considering, without objection or dissent from any source, until the institution of this suit, or the commencement of this controversy,—a period of nearly six years.

It can not be doubted, that an express power and duty was devolved on the mayor and councilmen of the city, "to keep in repair all necessary streets, avenues, drains, and sewers, and to pass regulations necessary for the preservation of the same," and to pass such by-laws and ordinances as were necessary and proper for the execution of the power and performance of the duty. The duty was of that kind denominated an absolute and perfect corporate duty; and if from its neglect an injury resulted to an individual, who was free from fault, an action for damages against the corporation could be supported.—*Smoot v. Mayor,* 24 Ala. 112; *Campbell v. City Council of Montgomery,* 53 Ala. 527; 2 Dill. Mun. Cor. § 789; *Weightman v. Washington,* 1 Black, (U. S.) 40. Subject to this duty and liability, in consequence of the power and privileges conferred on the corporation, the power to keep the streets free from obstructions—to keep them open for the safe and convenient transit of all persons—to prevent any use of them incommoding the public, and to ordain all such ordinances as were proper and meet to accomplish this end—can not be doubted.—2 Dill. Mun. Cor. § 538. The *side-walks* are but parts of the street, so far as the authority and duty of the city council in this respect may be concerned. Their primary and appropriate use is the free and unobstructed passage of the public.—*White v. Kent,* 11 Ohio St. 553. The cases are numerous, in which municipal corporations have been subjected to liability in consequence of injuries resulting to individuals, because of obstructions they have suffered others to place upon *side-walks;* or because of

the acts of others, done with their knowledge; or because of their own omissions to keep them in repair, whereby they became and were unsafe and dangerous.—*Chicago v. Robbins,* 2 Black, (U. S.) 418; *Manchester v. City of Hartford,* 30 Conn. 118; *Hall v. City of Lowell,* 10 Cush. 260; *Hubbard v. City of Concord,* 35 N. H. 52.

It was shown in evidence, that the 333d section of the Revised Code of the Laws of the City is in the following words: "Any person who piles, places, deposits, receives, discharges, packs or unpacks any goods, wares or merchandise, upon the side-walk, must, on conviction, be punished by fine, fine and imprisonment, or hard labor for the city. But this section must not be so construed as to prevent persons from rolling or moving, without stopping, goods to or from store, across the side-walk." It is under this section the proceedings against the appellee were had, and judgment and sentence were pronounced by the appellant in his capacity of mayor, and whilst holding a court in obedience to the charter. The validity of this section, and of the whole body of corporate law styled the Revised Code, is assailed, because the ordinance adopting it *was not presented to the mayor for his approval and signature, and, if approved, was not signed by him;* or, if disapproved, was not returned to the common council, with his objections, and enacted by a two-thirds vote, as required by the 24th section of the charter of 1868.

The purpose of this provision is plain. The separate, independent approval of the mayor, upon his own individual responsibility, clearly manifested by his signature; or his disapproval, accompanied with the reasons for it, operating as a veto upon the legislative action of the common council, requiring further time for deliberation, and a larger vote before the proposed ordinance could become a corporate law, was intended as an additional security against hasty, unwise and inexpedient corporate legislation. There can be no construction given this provision of the charter, which will defeat its purposes, or lessen its usefulness. At the same time, there must not be a construction so rigid—clinging closely to the letter, rather than to the spirit—as would draw upon the law the reproach of harshness and absurdity.

It is a general rule of law, that statutes directing the mode of proceeding of public officers, relating to the time and manner, are directory, unless they use negative words, or there is something showing plainly a different intent.—Sedgwick, Stat. and Con. Law, 316, note *a; Striker v. Kelly,* 7 Hill, 9; 25 Wend. 696; *Savage v. Walshe,* 26 Ala. 620; *Corliss v. Corliss,* 8 Verm. 373; *People v. Cook,* 14 Barb. 259. The substance, the essential requisites of the statute, are not dis-

[Woodruff v. Stewart.]

regarded or disobeyed. These must be observed, and a compliance with them is indispensable. It is form, not substance, the courts may dispense with, that the substance may not be lost in pursuit of the shadow. The legislative department of the government of the city of Selma can prescribe by-laws and ordinances, only in exercise of the powers conferred by the charter, and in obedience to its provisions. The common council can, by no action they may take, nor by any omission, deprive the mayor of the participation in their legislation, to which the charter entitles him. An ordinance not presented to him, which he has not had the opportunity of approving or disapproving, could not become a corporate law. That is not the question we are considering. The ordinance adopting the Revised Code was presented to a meeting of the common council, when the mayor was presiding, and seven of the eight councilmen were present. It was adopted, two of the councilmen only voting in the negative. In the minutes of the proceedings, it is set out in full, and these minutes are signed by the mayor. The matter of substance is the approval of the ordinance by the mayor, and not the form or manner in which it may be manifested, so that it is plainly manifested in writing, as all corporate action of this character must be manifested.—1 Dill. Mun. Cor. §§ 265–66. Signing the ordinance, or an indorsement upon it, is not the only mode in which approval can be manifested. It may well be conceived that the power conferred on the mayor, of disapproving the legislative action of the council, will be very cautiously and sparingly exercised. Much of doubt as to the policy of particular ordinances would be resolved in favor of the action of a majority of the council, rather than by disapproval to defeat or thwart the will they had expressed. It could happen that, by a message in writing, stating the reasons which had induced him to hesitate, and ultimately to approve, the mayor would return the proposed ordinance. From inadvertence, the ordinance may not have been signed. Yet the message, entered at large on the minutes of the council, is signed, and is preserved with the corporate records and files; and for years the validity of the ordinance is recognized, the corporation being governed by it. Can it be possible that a court could be justified in pronouncing the invalidity of the ordinance, because it did not bear the signature of the mayor, though his approval was clearly manifested by the corporate records, nullifying all corporate action founded on the ordinance, converting into trespassers the corporate officers who in good faith had executed it? While we hold the approval of the mayor, or his disapproval, and in that event the enact-

ment of the ordinance in the mode prescribed by the statute, is essential to its validity; all the purposes of the statute are satisfied, when the approval distinctly and affirmatively appears upon the corporate records or files which bear his signature, though the ordinance is not signed by him. The rule might be different, if, as in the cases to which we have referred, the statute contained negative or restraining words. The mayor and councilmen, or other officers of a municipal corporation, are not usually selected because of their learning in the law, their nice observance of its forms, or their instruction in fine distinctions. If their action is to be subjected to rigid criticism, much of it done in good faith, and in the spirit of their defined authority, would be avoided. We affirm the validity of the ordinance, and that the mayor had rightfully the jurisdiction exercised in issuing the warrant for the arrest, and in the conviction of the appellee.

The argument addressed to the reasonableness of the section of the Revised Code, under which the conviction was had, we do not now consider. The mayor, having jurisdiction, was invested with full authority to pass upon that question. Error may or not have intervened in its determination. If it did, the law appoints the mode for its correction. A court is entitled to full protection against an error of judgment, whenever its proceedings are collaterally assailed.—*Craig v. Burnett*, 32 Ala. 728.

These conclusions are decisive of the case. That a judicial officer, the highest or lowest, keeping within the pale of his jurisdiction, can not be made answerable at the suit of an individual, supposing himself aggrieved, is a principle too firmly established, and has been recently the subject of such extended discussion in this court, that we are content with its simple announcement.—*Irion v. Lewis*, 56 Ala. 190; *Busteed v. Parsons*, 54 Ala. 303. We may discard all averments of malice, and whatever of evidence there may be in support of them. Malice and error combined, nor either separately, will furnish a private cause of action against a judge. Malice, or corruption, in a judge, though he keeps strictly within the pale of his jurisdiction, and adheres to the very letter of the law, is the gravest of offenses, which the law provides adequate and appropriate remedies to punish. Individual wrong, suffered from them, is merged in the higher wrong to society and the State, and must be redressed by the remedies the State can pursue against the unjust judge.

The charge requested by the apellant ought to have been given. Because of its refusal, the judgment must be reversed, and the cause remanded.