# Coleman *et al. v.* Roberts.

### *Action on Official Bond of Justice of the Peace.*

1. *Authority of justice to punish contempt at common law and by statute.*—At common law, a justice of the peace had power to punish contempts committed in his presence, while sitting officially, and by section 840 of the Code of 1886, the power to punish for contempt is vested in him with a limitation only upon the amount of punishment.

2. *Liability of justice for judicial acts; effect of statutory bond.*—No private action can be maintained against a justice of the peace for errors of judgment while exercising his judicial authority, nor even for a malicious use or abuse of the same; and the statute requiring a bond from such officers does not extend their liability in this regard.

3. *Jurisdiction of justice of the peace to punish for contempt committed in presence of the court.*—All persons present in a court of a justice of the peace, whether in obedience to process, or voluntarily as mere bystanders, are subject to the jurisdiction of the court, in so far as is necessary for the preservation of order and decorum; and for any act by any of such persons tending to disturb or obstruct the administration of justice, or by interrupting the due course of the trial, or by impairing the respect due to judicial tribunals, he may be adjudged guilty of contempt of court, and punished without the issue of any process, and without any further proof or examination.

4. *Same; liability of justice for adjudging person guilty of contempt; facts of this case.*—A notary public, with jurisdiction of a justice of the peace, without making himself or sureties on his bond liable to civil action, can punish for contempt a bystander, who, when the notary, sitting as justice in the trial of a criminal case, intimated that he would find guilty a person being tried before him for assault, interrupted with a statement that he knew two persons who saw the affair,

and then refused upon the demand of the justice to disclose their names.

5. *Same; failure of justice to enter judgment for contempt; collateral attack.*—The entry of judgment on a justice's docket must be taken in connection with any process the justice may have issued in execution of the judgment; and where after a contempt, the entry of such judgment on his docket imports that only a fine was imposed as punishment, but at the time such judgment was rendered, the justice issued a warrant of commitment, commanding that the offender be imprisoned, under which *mittimus* he was taken in custody, such imprisonment is a part of the punishment imposed for the contempt, and must be so considered.

6. *Same; same; construed together with the mittimus.*—An entry of judgment on a justice's docket, reciting merely that the person was fined for contempt, must be taken in connection with the process issued in execution thereof; and where a warrant of commitment was issued and executed by the imprisonment of such person before the entry of judgment was made, such judgment will be read along with the warrant, and the imprisonment will be considered as a part of the punishment for such contempt.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by the appellee, Rankin Roberts, against the appellants, James B. Coleman and the sureties on his official bond, to recover damages, as alleged in the complaint, for that the defendant, James B. Coleman while holding and discharging the duties of the office of notary public and ex-officio justice of the peace in Jefferson county "maliciously and without any probable cause therefor, and under color of his office, * * * caused the plaintiff to be arrested and imprisoned in the county jail of Jefferson county for six hours on the charge of contempt of court, when the plaintiff had not been guilty of any contempt whatever, or of any act which, under the laws of the State of Alabama, could be construed as such ; and the act with which the plaintiff was charged was not one for which he could have been summarily punished for contempt."

To the complaint as filed there were demurrers interposed, but under the opinion, it is unnecessary to notice them. The defendants pleaded the general issue and several special pleas setting up the facts attendant upon the adjudging by the defendant, James B. Coleman, of the plaintiff guilty of contempt of court. There were demurrers filed to the pleas, which were overruled.

[Coleman *et al.* v. Roberts.]

The testimony for the plaintiff tended to show that while one Whit Hicks was being tried before the defendant on a charge of assault and battery, the plaintiff, who was on Hicks' appearance bond, was present in court, and upon Coleman saying something about the testimony and speaking as if he intended to fine Hicks, the plaintiff arose and said to Coleman:   "I know two men at my house who saw the affair, and stated as the defendant's witness swore."   Coleman then asked Roberts to give him the name of these witnesses, so that he could summon them, and upon his refusal to do so, the justice said, "I have the power to fine you for contempt, if you do not," and upon the plaintiff's persistent refusal, the justice said, "I fine you six dollars, and sentence you to six hours in jail."   The fine was paid and the plaintiff was carried to jail.   It was shown that the plaintiff and the defendant Coleman were on friendly terms at the time the plaintiff was adjudged guilty of contempt; and the plaintiff's testimony further tended to show that upon being asked by the plaintiff's attorney why he sentenced him to jail, the defendant said that it was because he refused to tell the names of the witnesses about whom he spoke, and on cross-examination, the plaintiff's witnesses also testified that Coleman probably may have said that it was for contempt.

The testimony for the defendant tended to show that at the time Roberts spoke during the trial of Whit Hicks before the defendant, it was in a rude, disrespectful and insolent manner; his voice was loud, and his language and manner interrupted the progress of the trial; that the defendant stated to Roberts that he wanted to do full justice in the case, and it was important to have the witnesses present, and insisted on Roberts giving him the names; but in a disrespectful way Roberts declined to do so, and thereupon the defendant adjudged him guilty of contempt, and fined him six dollars and sentenced him to six hours imprisonment.

The docket of the defendant, Coleman, was introduced in evidence, and on the page where the entry of the case of the said Whit Hicks was, there was also the entry of a fine against Roberts as follows: "R. Roberts fined six dollars in this case," and nothing more relating to the alleged contempt proceeding appeared on said

docket. There was also introduced in evidence a *mittimus*, which the defendant made out and delivered to the deputy sheriff, requiring Roberts' committal to the jail, which was legal in form.

The court at the request of the plaintiff gave to the jury the following written charge : "If the jury believe from the evidence all the facts stated in any one of the three counts of the complaint, then they should find for the plaintiff." The defendant duly excepted to the giving of this charge, and also excepted to the court's refusal to give, among others, the following written charge requested by them : "If the jury believe the evidence, they must find for the defendants."

There were verdict and judgment for the plaintiff, assessing his damages at one hundred dollars. The defendants appeal, and assign as error the several rulings of the court to which exceptions were reserved.

WILLIAM A. WALKER and W. R. HOUGHTON, for appellants.—1. The acts complained of were judicial in their character and not actionable. It is undeniably the rule that a judge can not be made liable in a civil suit to a party for his judicial acts.—*Irion v. Lewis*, 56 Ala. 190. No matter how erroneous the judgment of the court may be, still if the court had jurisdiction to pronounce the sentence, its judgment can not be disputed. In one case the probate court in its decree recited that the guardian had executed a new bond for several minors, when in fact the name of one had been omitted through mistake, it was held that the judgment could not be disputed.—*Hamner v. Mason*, 24 Ala. 480. And when the record declares the ascertainment of a jurisdictional fact, its determination is conclusive until reversed on appeal.—*Pettus v. McClannahan*, 52 Ala. 55 ; *Turrentine v. Daly*, 82 Ala. 205 ; *Landford v. Dunklin*, 71 Ala. 594. The principle is thus stated in 7 Amer. & Eng. Encyc. of Law, 79 : "When any action is brought against any person for anything done by him in a judicial capacity, the judgment delivered and the proceedings antecedent thereto are conclusive proof of the facts therein stated, whether they are or are not necessary to give the defendant jurisdiction, if assuming them to be true they show that he had jurisdiction." "And a judge is not liable in action for damages for any opinion he may

[Coleman *et al.* v. Roberts.]

deliver as such."—12 Amer. & Eng. Encyc. of Law, 33, 148.

2.   Applying these well settled principles to the complaint, we find that the plaintiff claims damages of a judge for imprisonment for contempt of court. All courts have inherent power to punish for contempt. There seems to have been a difference between courts of superior and inferior jurisdiction at one time, but our Code gives a justice the power to punish for contempt. Code of 1886, § 840. And precisely the same power to punish for contempt is conferred on all courts alike, the punishment alone being varied.—Code of 1886, § 648. Those decisions which seem to imply that there is a difference in the jurisdiction of different courts have no application in this State. The case thus stands on the statement by the plaintiff that he was adjudged guilty of a contempt of court by a court of competent jurisdiction, which it did not exceed in time, place or extent of penalty imposed, for which act, he claims damages of a judge who acted in his judicial capacity; and the added allegation that such act was done maliciously and without probable cause, adds nothing to the complaint. *Irion v. Lewis,* 56 Ala. 190.

S. W. JOHN, L. C. DICKEY and JAMES A. MITCHELL, *contra.*—1. The justice had no power to compel or order the plaintiff to give him the names of the men referred to by him; and, therefore, the justice had no jurisdiction to punish him as for contempt, for his refusal to do so.   The mere interruption of the court, in stating that he knew other witnesses in the case, was not sufficient to justify his being adjudged guilty of contempt. Upon the facts disclosed, the plaintiff in the present suit made out his case.—*Duckworth v. Johnston* 7 Ala. 578; *Crumpton v. Newman,* 12 Ala. 201; *Withers v. Coyles,* 36 Ala. 328; *Craig v. Burnett,* 32 Ala. 328; *Piper v. Pearson,* 2 Gray 120; *Clarke v. May,* 2 Gray 410.

BRICKELL, C. J.—The assignments of error are numerous, but there is a single question of materiality and importance to the rights of the parties, involved; and that question depends upon facts which may be acccepted in the phase in which the testimony of either party presents them. The defendant was a notary public

of the appointment of the Governor, having and exercising the same jurisdiction as a justice of the peace, within the ward or precinct for which he was appointed. While holding court, at a proper time and place, one Whit Hicks was brought before him charged with having committed an assault and battery, an offense within the jurisdiction of the defendant as justice. During the trial, the defendant adjudged that the plaintiff who was present as a bystander or spectator, was guilty of conduct constituting a contempt, and sentenced him to pay a fine of six dollars, and to suffer six hours imprisonment in the county jail. The sentence and consequent imprisonment, is the gravamen of the complaint.

"The power to punish contempts by fine and imprisonment, is incident to all courts of justice; and without such power, the administration of the law would be in continual danger of being thwarted by the lawless. The power seems to be as ancient as courts themselves." *Easton v. State,* 39 Ala. 551. With as much of precision as the nature of the subject will probably admit, the Code enumerates the acts or conduct constituting contempts which may be punished summarily; and of these acts or conduct, there is no one, probably, which was not at common law deemed a contempt.—Code of 1886, §§ 648–650. Embraced in the enumeration, are, "Disrespectful, contemptuous, or insolent behavior in court, tending, in any wise, to diminish or impair the respect due to judicial tribunals, or to interrupt the due course of trial;" and "a breach of the peace, boisterous conduct, violent disturbance, or any other act calculated to disturb or obstruct the administration of justice, committed in the presence of the court, or so near thereto as to have that effect."

. The words of the statute are broad and general, comprehending all courts; whether they be of the class termed of superior, or of inferior jurisdiction. It was well settled at common law, that a justice of the peace had power to punish contempts committed in his presence, while sitting officially.—Cooley on Torts, 423; Murfree on Justices of the Peace, § 84. Though this was the known principle of the common law, and broad and comprehensive as were the words of the statute defining contempts, the Code, in express terms, vests the justice with authority, "to punish for contempt by fine

[Coleman *et al.* v. Roberts.]

as high as six dollars, and by imprisonment not exceeding six hours."—Code of 1886, § 840.

The doctrine has become so firmly settled, as to have passed into a truism, that an action will not lie against a judicial officer, the highest or lowest, keeping within the sphere of his jurisdiction, by one supposing himself aggrieved by his judicial action.—Mechem on Public Officers, § 619, *et seq.;* Cooley on Torts, 403, *et seq.* ; *Busteed v. Parsons*, 54 Ala. 393 ; *Irion v. Lewis*, 56 Ala. 190 ; *Woodruff v. Stewart*, 63 Ala. 206 ; *Heard v. Harris*, 68 Ala. 43. Averments of malice, or of corruption in the exercise of jurisdiction, or of authority, work no change in the operation of the principle. "Malice and error combined, nor either separately, will furnish a private cause of action against a judge."—*Irion v. Lewis*, 56 Ala. 190, *supra* ; *Woodruff v. Stewart*, 63 Ala. 206, *supra*. The true theory and reason of the doctrine, is stated with clearness by Judge Cooley : "Whenever the State confers judicial powers upon an individual, it confers therewith full immunity from private suits. In effect, the State says to the officer, that these duties are confided to his judgment; that he is to exercise his judgment fully, freely, and without favor, and he may exercise it without fear ; that the duties concern individuals, but they concern more especially the welfare of the State, and the peace and happiness of society ; that if he shall fail in a faithful discharge of them, he shall be called to account as a criminal ; but that in order that he may not be annoyed, disturbed, and impeded in the performance of these high functions, a dissatisfied individual shall not be suffered to call in question his official action in a suit for damages."—Cooley on Torts, 408. There has been, not infrequently, much of objection, that the doctrine has a tendency to promote the exercise of judicial power arbitrarily or capriciously ; and may shield unscrupulous, corrupt men in judicial offices. This may be true to some extent, but if true and individual injury results, it is only an instance of the merger of individual wrong in the higher wrong to the State, and must be redressed by the higher remedies the State can pursue against the unjust judge.—*Busteed v. Parsons*, 54 Ala. 393, *supra*.

In *Kelly v. Moore*, 51 Ala. 364, it was decided that a justice of the peace and the sureties on his official bond,

were liable for an abuse by the justice of the authority of his office, in causing the arrest and imprisonment of the plaintiff, "without reason or probable cause." The decision was rested on the statute declaring the legal effect of official bonds, and among other causes declares them obligatory on the principal and sureties, "for the use of every person who is injured, as well by any wrongful act committed under color of his office, as by his failure to perform, or the improper or neglectful performance of those duties imposed by law."—Code of 1886, § 273. The judgment was by default, and the material, controlling inquiry was, whether the complaint contained a substantial cause of action as against all the defendants jointly, for then, as now, the statute prohibited the reversal of judgments because of any matter not previously objected to, if the complaint contained a substantial cause of action.—Code of 1886, § 2835. The construction of the complaint was, that the wrong complained of was not committed by the justice while in the exercise of the jurisdiction the law conferred. The language of the court is : "It must be observed, the wrong complained of is not an erroneous or corrupt exercise by the justice of the jurisdiction the law confers. It is an abuse of the authority of his office ; a pretended, not a real exercise of his jurisdiction. 'Under color of his office,' he arrests and imprisons the plaintiff. This was a misdemeanor at common law, and a tort for which an action could have been maintained against the justice. The sureties on his official bond would not, at common law, have been liable for this tort. The malfeasance of their principal, of which misfeasance could not also be predicated, was not within the scope of their obligation.—*Governor v. Hancock*, 2 Ala. 728 ; *McElhaney v. Gilleland*, 30 Ala. 183. This was deemed a defect in the common law, and to cure it, the statute now extends the liability of sureties on official bonds to injuries from wrongful acts done by the officer under color of his office, as well as to the nonperformance, or negligent performance of official duty. The complaint avers the wrong, as we have stated, the official character of McGovern, and the execution of an official bond, with the other defendants as sureties. However inartificial these averments may be, they must, after judgment by default, be deemed to disclose a sub-

[Coleman *et al.* v. Roberts.]

stantial cause of action against all the defendants jointly." Whether the construction of the complaint was, or was not erroneous, is not now of importance. The decision cannot be regarded, and must not be regarded, as infringing upon, or modifying the general principle, that judicial officers are not liable to civil suits for a wrongful or for a corrupt abuse of the authority with which they are invested. The later and more thoroughly considered case, *Irion v. Lewis*, 56 Ala. 190, (which was followed in *Harris v. Heard*, 68 Ala. 43), affirms the doctrine broadly, that justices of the peace are not subject to private actions for errors of judgment when acting judicially, nor for a corrupt abuse of official authority; and that the consequence or effect of requiring from them official bonds, is not to extend their liability. This we regard as the sound exposition of the statute.

In all cases of this character, inquiry is confined within a narrow compass. It is not whether there is error, or irregularity, nor what were the motives with which the act complained of was done. It is, whether the act was an exercise of the jurisdiction, or of the authority, the law confers. If it be, immunity from suit by a private person attaches. The jurisdiction of the defendant as justice, was plenary. The acts deemed contemptuous, were committed in his presence, while sitting as a court, and in the exercise of the jurisdiction with which he was invested. It is not of consequence, that the plaintiff was not present in obedience to process issued to him. All who were present, whether in obedience to process, or voluntarily as mere bystanders or spectators, were subject to the jurisdiction of the court, in so far as was necessary for the preservation of its order and decorum. They were bound to abstain from any and every act tending to disturb or obstruct the administration of justice, or to interrupt the due course of trial, or to impair the respect due to judicial tribunals. The interruption of the court by the plaintiff, however respectful may have been his words or tone of voice, was unseemly and inexcusable, unless he intended to further the due administration of the law by information that there were other witnesses accessible, from whom material evidence could be obtained. If courts, high or low, are subject to such intrusions, and are powerless to pre-

vent them, the administration of justice would be delayed, and the courts at the mercy of the garrulous intermeddler.

In *Easton v. State*, 39 Ala. 551, it is said : ''It is settled by an unbroken chain of authorities, that when the contempt is committed in the face of the court, 'the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any further proof or examination.' '' And it is further said : ''Another principle seems to be equally well settled, to-wit, that a judgment or sentence for contempt is valid, without any recital of the conduct or facts which constitute the contempt.'' The contempt having been committed in the presence of the court, there was no necessity, as there would have been no propriety, in the issue of process for the arrest of the offender, so long as he remained in court. The court had the jurisdiction of his person, which would have attached, if he had been detained by the most formal process.

Whether the justice had entered the judgment and sentence on his docket, prior to the adjournment of the court, is a fact about which there is a conflict in the evidence. But that he had issued the warrant of commitment, that was in the hands of the officer, and the plaintiff was in custody, are facts uncontroverted. The judgment and sentence, if practicable, should have been entered on the docket before the adjournment. Neglect to enter it, at most, would constitute mere error or irregularity in the exercise of jurisdiction, not affecting the validity of the judgment when drawn in question collaterally. It was the rendition of the judgment—the oral rendition in the presence of the offender—which was judicial ; the entry of it on the docket was merely ministerial.—Murfree on Justices, §§ 557, *et seq*. A justice's court is not a court of record ; the only memorial of his proceedings, he is required to keep, is ''a docket of all cases brought before him, in which must be entered the names of the parties, the return of the officer, and the entry of the judgment, specifying the amount of the same, and the day of its rendition.''—Code of 1886, § 841. There is no time prescribed within which the entries on the docket are to be made. Doubtless it is the better practice to make them contemporaneously with the acts to which they refer. But if they are not so made, and are

made within a reasonable time, the ministerial duty is discharged, and invalidity can not be imputed to the judicial action of which they are the memorial. If the entries are ambiguous, of doubtful import, they must, if they will bear it, receive that interpretation which will support the proceedings; and when they import a judgment, they must be taken in connection with any process the justice may have issued in execution of the judgment. The entry on the docket may import only that a fine was imposed as the punishment for the contempt; before the making of the entry, a warrant of commitment had issued and the offender was in custody. The warrant would have authorized the amendment of the judgment as entered on the docket, if amendment had been necessary; but it was not necessary when the entry and warrant are read in connection. Justices of the peace, "are not legal experts—they are not masters of legal form;" and it is enough, that by the entries on their dockets and the process they issue, their jurisdiction of person and subject matter is disclosed.

The city court erred in the instruction given the jury at the instance of the plaintiff, and in the refusal of the general affirmative instruction requested by the defendants. We do not deem it necessary to pass on any other of the assignments of error. If there should be another trial of the case, what has been said is a sufficient guidance for its conduct.

Reversed and remanded.