(Summit County, Ohio, Court of Common Pleas.)

## THOMAS C. CHILDS v. ALVIN C. VORIS.

*Libel.—Suit against judge for his language from the bench.*

1. A judge of the court of common pleas is not liable in an action for libel for his language used in deciding a cause or matter submitted to him over which the court had jurisdiction. His motives in the choice of language used in announcing his opinion cannot be made the subject of legal inquiry.

(Decided January 15, 1897.)

NYE, J.

The case of Thomas L. Childs against Alvin C. Voris, has been submitted to the court on a demurrer to the petition.

This is an action for libel, wherein the defendant is charged with publishing a statement derogatory to the character and standing of the plaintiff as an attorney and counsellor at law.

In view of what I shall say, and for the purpose of a better understanding of the case, I quote the petition in full, omitting however the caption and verification only.

"Comes now the plaintiff, and for cause of action says that the defendant on or about the 27th day of April, A. D. 1896, wickedly and maliciously, intending to injure the plaintiff in his good name, credit and fame, and to injure him in his profession and business as an attorney and counsellor of this court, and to bring him into contempt and disrepute among his neighbors and other good and worthy citizens, and to cause it to be believed and suspected by his said neighbors and other citizens that the plaintiff was incompetent to properly discharge the important duties of his profession, and to vex, harass and oppress him, the defendant did on the 27th day of April, A. D. 1896, aforesaid, at Akron, Ohio, falsely, wickedly and maliciously compose and publish, and cause and procure to be published and circulated, and cause to be circulated extensively in the city of Akron, Ohio and vicinity, of and concerning him, the said plaintiff, a false, scandalous and defamatory libel, containing among other things, the false, scandalous, malicious, defamatory and libelous matter following, of and concerning the said plaintiff; that is to say:

" 'Now as to the alleged effort of the court to prevent the selection of Mr. Childs. He has appeared before this court so often that we are fairly enabled to estimate him as a factor in the defense of a great State case. We take judicial notice of what transpired before us in open court. From what I know, I could not conscientiously assign him to defend in this case.

" 'On part of counsel, a just sense of the proprieties of conduct in a trial is essential in our view, especially so in a case like this. Mr. Childs has convinced this court that he is not adequately possessed of this sense. I regret to say this, but he has put himself in such attitude before the public and the court, that this explanation is pertinent for the vindication of the independence and dignity of the court, although just criticism exposes him to humiliation. The record and proceedings of the Thorp divorce case, tried last term, will vindicate the foregoing estimate of Mr. Childs. My judgment based on what has transpired before me is against assigning him for the defense, and I must act on it though it does not meet with the approval of the members of the bar who concurred in the resolution read.' "

"Meaning thereby to charge plaintiff with want of skill and care as an Attorney and Counsellor at Law, and meaning to charge thereby and

[COPYRIGHT, 1897, BY CARL G. JAHN.]

did charge plaintiff with incompetency by not having sufficient legal knowledge to practice as member of the bar.

"And further, that in order to vex, harrass and oppress him, the defendant did, on the 27th day of April, A. D. 1896, as aforesaid, at Akron, Ohio, falsely, wickedly and maliciously compose and publish, and cause and procure to be published and circulated, and caused to be circulated extensively in the city of Akron and vicinity, of and concerning him, the said plaintiff, a false, scandalous and defamatory libel, containing, among other things, the false, scandalous, malicious, defamatory, and libelous matter following, of and concerning the said plaintiff, that is to say:

" 'I will never, by any voluntary act of mine, subject the stricken members of the Stone family, especially the daughters, whose nervous shock of that awful night will follow them through every moment of their lives, sleeping or waking, to the hazards of additional shock from an undignified and unfeeling defense, or subject the public to the humiliation of putting that side of the case in incompetent hands—hazards that the court deem substantial. As I understand the matter, I would never forgive myself, nor could I expect a absolution from the public if I had been ever passive in the matter of counsel for Cotell under the circumstances known to me. I have no personal grievances against Mr. Childs."

Meaning thereby to charge the plaintiff with being incompetent, undignified and unfeeling, and want of proper understanding necessary to conduct the case properly.

That by reason of the aforesaid premises the plaintiff has been and is greatly injured in his reputation aforesaid, and has been greatly vexed, harrassed and impoverished, and has lost and has been deprived of divers and great gains and profits which would otherwise have accrued to him in his profession and business, to his daamge in the sum of Fifty Thousand Dollars ($50,000.)"

To this petition a general demurrer has been filed by the defendant, on the ground that it does not state facts sufficient to constitute a cause of action against him.

The defendant claims that at the time the language is charged to have been used by him, he was a Judge of the court of common pleas of the fourth judicial district of Ohio; that Summit county was one of the counties composing said judicial district, and that the petition shows upon its face that what is alleged to have been said by him was said in his judicial capacity, and is therefore privileged and not actionable.

The plaintiff, on the other hand, claims that there is no allegation in the petition showing that the defendant was a judge of the court of common pleas, or any other court, and that nothing in the petition showing that what is alleged to have been said, was said in the discharge of official judicial duty. And the plaintiff claims that the petition being so framed as not to show that the language charged was used in the discharge of a judicial duty, if the defendant desires to take advantage of the privilege claimed by him he must set it up by way of answer, and thus raise an issue to a jury.

The plaintiff further claims that the language alleged to have been used by the defendant is such as to show that it was not privileged, even if it was spoken by defendant in the discharge of a judicial duty, and that the petition therefore shows upon its face that the language alleged to have been used by defendant is actionable, even though it was spoken by him in the discharge of a judicial duty.

This, then, leads us to the consideration of two principal questions. First—Does the petition upon its face show that what is alleged to have been said, was said by one in the discharge of a judicial duty?

Second—Is the language alleged to have been used by the defendant, taken in connection with all the allegations of the petition, actionable?

I will consider these two questions in the order stated. It will be observed that although there are two statements of alleged libelous matter, there is but one cause of action set forth in the petition And it would seem from the context of the two statements, and the fact that they were both alleged to have been made on the same day and at the same place, that they are two parts of one and the same discourse or statement. But whether this be true or not, makes but little difference, as I will consider each separately.

The first statement of libelous matter, contains the following: "Now, as to the alleged effort of the court to prevent the selection of Mr. Childs. He has appeared before this court so often that we are fairly enabled to estimate him as a factor in the defense of a great state case. We take judicial notice of what transpired before us in open court. From what I know, I could not conscientiously assign him to defend in this case."

It seems to me that this statement could not be read by any one at all familiar with the most common proceedings of a court but that it would be attributed to a judge in the discharge of some judicial act. The petition states that the plaintiff is an attorney and counsellor at law. We must take judicial notice of all the statutes of Ohio. Section 7245, Revised Statutes, provided for the assignment of counsel for a person who is unable to employ counsel for himself. It seems very clear, from reading the language above quoted, in view of the fact that the plaintiff is an attorney at law, and with a knowledge of said statute, that the person using said language was deciding a question as to the appointment of counsel for an indigent prisoner, and that the plaintiff was the person under consideration.

The second statement set forth in the petition is not quite so clear when considered alone, but if it is treated as a part of the first statement it seems very clear that it is the utterance of a judge, in the discharge of a judicial duty.

That portion of the second alleged libelous statement which pertains to duty devolved upon the person speaking is as follows: "I will never, by any voluntary act of mine, subject the stricken members of the Stone family     *     *     *     to the hazards of an additional shock from an undignified and unfeeling defense or subject the public to the humiliation of putting that side of the case in incompetent hands, hazards that the court deems substantial."

This petition must be treated as a whole, and when thus considered it seems clear to my mind that the language last quoted was the language of a judge in the discharge of some judicial act.

And the whole petition taken together most clearly shows to an intelligent reader that the language set forth in the petition as libelous was used by a judge in the judicial act of passing upon the question of the assignment of counsel to defend a person charged with crime. Under the statute referred to, a judge of the court of common pleas is the only person authorized to make such assignment.

This, then, leads me to the conclusion that the petition shows upon its face that what is alleged to have been said by the defendant was said by a judge of the court of common pleas in the discharge of a judicial duty. And I reach this conclusion from the reading of the petition, without resorting to any personal knowledge that I have that the defendant, Alvin C. Voris, was, at the date of the alleged libel, one of the judges of the court of common pleas of the fourth judicial district of Ohio.

It does not fully appear by the petition where this alleged libelous matter was published, except that it is said it was published in the city

of Akron, Ohio. Whether it was published in a newspaper, in a legal magazine, as the opinion of the court, or elsewhere, does not appear from the statements of the petition. For aught that appears, it may have been the written opinion of the court deciding a matter submitted to it for decision, and announced in open court.

It is claimed, in argument by counsel for the plaintiff, that even though the language alleged to have been used by the defendant, was used while acting as a judge, the time had not arrived for the assignment of counsel for a defendant, because no indictment had been found and presented by the grand jury against Cotell, the supposed criminal. It is a sufficient answer to this to say that if the court had jurisdiction of the subject matter under consideration, there will be no presumption in the absence of any allegations to the contrary, that the court was not fully authorized to act in the premises at the time the language is alleged to have been used.

This position is fully supported by the case of Liles v. Gaster, 42 Ohio St., 631.

I come now to the consideration of the second question, to-wit: whether the language set forth in the petition is actionable.

If I am correct in determining that the petition, taken as a whole, shows the language alleged to have been used and was used by a judge in the discharge of a judicial duty, then the question for consideration is whether a judge is liable to a civil action while acting in his judicial capacity.

I am not aware that our own Supreme Court has passed upon this precise question. But on a careful examination of the authorities, I believe it is the settled law of this country and England, that judges of courts of general jurisdiction are not liable to civil actions for their judicial acts.

This question has been so thoroughly discussed by some of the highest state courts of this country and by the Supreme Court of the United States, that I hardly need to do more than to quote from some of the more important of these decisions. The language is so forcible and the arguments so convincing that I cannot do better than to adopt passages from a few of the decided cases.

In the case of Bradley v Fisher, 13 Wall., 335 (20 L. Ed., 646), the defendant, as judge of the Criminal Court of the district of Columbia, had ordered the plaintiff's name dropped from the roll of attorneys of said court for contempt of said court. The plaintiff brought a civil action for damages against the defendant, for his action in said matter. The Supreme Court of the United States, in said case, holds that said action was not maintainable.

After a careful review of the authorities, and in a well considered case, Justice Field, who delivered the opinion speaking for the court, says, among other things: "For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be forced to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. As observed by a distinguished English judge, it would establish a weakness of judicial authority in a degrading responsibility." *　*　*

"Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed. The purity of their motives cannot in this way be the subject of judicial inquiry."

In another portion of the same decision the learned judge discusses

the question of alleged malicious and corrupt motives of the judge in the discharge of judicial duty. In this connection he says: "That judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously and corruptly."

This decision coming from the highest court in the land should set at rest forever in this country any claim that a civil action can be maintained against a judge for any judicial act, over which he had jurisdiction of the subject matter.

The court, in this last named case, says: "The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied that we are aware of, in the courts of this country."

In Busteed v. Parsons, 54 Ala., 393 (25 Am. Rep., 688), it was held that: "A judge of a superior court of general jurisdiction is not liable in a civil action for acts done in his judicial capacity, and where he has jurisdiction of the subject matter, he is not liable for errors of judgment in holding that the facts of a case gives him jurisdiction." This was an action in which a judge of the District Court of the United States was sued for wrongfully sentencing the plaintiff to be imprisoned. It was determined that the affidavit upon which the plaintiff was charged was insufficient. Notwithstanding the insufficiency of the affidavit, the action could not be maintained aaginst the judge. He acted in a judicial capacity, and it was held, on demurrer, that he was not liable, and the action against him could not be maintained.

In the case of Lange v. Benedict, 73 N. Y., 12 (29 Am. Rep., 80), it was held that a judge of the United States Circuit Court could not be held to answer to a civil action for the judicial act of sentencing the plaintiff to imprisonment although the sentence was in excess of jurisdiction and void.

The case of Yates v. Lansing, 5 Johnson, 282, is considered a leading case in this country upon this subject. In that case Chief Justice Kent laid down the doctrine that a judge could not be held to answer in a civil action for his judicial acts. See 9 Johnson, 395 (6 Am. Dec., 290). The same doctrine is held in the case of Pratt v. Gardner, 2 Cush., 63. And I might say that this was a case of a justice of the peace.

Very many other authorities to the same effect will be found cited in the cases to which I have referred.

Thus far, under this head of my decision I have been considering the acts of a judge while discharging a judicial duty. I will now consider, briefly, the authorities bearing upon the words used by a judge in announcing his judicial opinion.

Newell, in his work on "Defamation," etc., on page 425, section 31, states the law upon this subject as follows: "Everything that a judge says on the bench, a witness while on the stand, counsel in arguing a client's cause, or a juror to his fellow jurors while in the jury room considering a case, is absolutely privileged, so long as it is in any way connected with the inquiry."

At section 32, page 426, the same author says: "A judge of a court has absolute immunity, and no action can be maintained against him even although it may be alleged that he spoke maliciously, knowing his words to be false, and also that his words were irrelevant to the matter in issue before him as wholly unwarranted by the evidence. It is essential to the highest interests of public policy to secure the free and fearless discharge of high judicial functions."

Our Supreme Court, in the case of Liles v. Gaster, 42 Ohio St., 631, has had before it a question involving the language used by a witness while testifying in a case which was on trial before a court of competent jurisdiction. An action was brought against the witness for what he said while so testifying. This case went tc the Supreme Court on demurrer to the petition, and that court held:

"That the court will presume, in the absence of an averment to the contrary, that the answers of the witness were within the scope of inquiry pertinent tc the issue then on trial, and that they were believed by the witness to be true."

"That upon che statements of the petition and the presumptions arising therefrom the witness was absolutely privileged, and he is not liable to a civil action for so testifiyng."

Johnson, J., in delivering the opinion of the court in this case, among other things, said: "The general rule is, that language used in the ordinary course of judicial proceedings, whether by a judge, a party, counsel, jurors or witnesses, is protected if it be relevant to the matter under consideration."

"The privilege accorded to a witness under such circumstances, is founded upon public policy. The due administration of justice requires that a witness should be perfectly free to speak according to his belief, without regard to consequences. He is sworn to tell the truth, the whole truth, and nothing but the truth, concerning the matter on trial. While doing so in good faith, he is absolutely privileged, and cannot be found guilty of perjury, nor is he liable to a civil action; thus far all the authorities agree."

In this case we have the utterance of our own Supreme Court in a case which is in principle like the one under consideration. If a witness is "absolutely privileged" and is not liable to a civil action, how much more ought a judge to be absolutely privileged from liability to a civil action in the discharge of his duties and for his language used upon the trial of a case before him on the discharge of any judicial duty.

In Lanning v. Christy,30 Ohio St.,115, the Supreme Court held that: "An action will not lie for statements contained in an answer alleged to be libelous, if such statements were honestly made, without malice, and if they were relevant, believed by defendant to be true, and were made upon probable causes, and under advice of counsel."

Quite a number of authorities are cited in this last named case, tending to show that the pleadings and papers filed in the course of legal proceedings are privileged, if they are filed in good faith and without malice.

And I believe the weight of the authorities is, that all papers filed, and all proceedings in courts of justice, are privileged, unless there is a bad motive shown, and that there was a purpose on the part of the person using the language to injure another.

If the pleadings and papers of parties filed in court are privileged, how much more ought the acts and language of a judge in the discharge of a judicial duty to be privileged. I have been unable to find a single authority which holds that a judge can be held liable in a civil action for any act done or word spoken in the discharge of a judicial duty.

I believe it to be the universal doctrine that the acts and speech of a judge in the dischare of a judicial duty in a matter over which he has jurisdiction are absolutely privileged, and the motives with which the act is done, and words spoken, cannot be inquired into in a judicial proceeding.

The demurrer to the petition will, therefore, be sustained.

C. P. Humphrey and H. C. Sanford, for Plaintiff.

A. C. Voris and Chas. Baird, for Defendant.